## MORRISTOWN LINCOLN-MERCURY, Inc. v. ROY N. LOTSPEICH PUBLISHING COMPANY, d/b/a The Knoxville Journal.—298 S. W. (2d) 788.

Eastern Section. August 10, 1956.

Petition for Certiorari denied by Supreme Court, December 7, 1956.

94

Frantz, McConnell & Seymour, and E. Bruce Foster, Knoxville, for plaintiff in error.

H. H. McCampbell, Jr., Knoxville, W. J. Barron, Morristown, for defendant in error.

HOWARD, J. The parties will be referred to as they appeared in the trial court.

The plaintiff agrees that the statement of the case and the pleadings are correctly stated in the defendant's brief, as follows:

"Plaintiff, Morristown Lincoln-Mercury, Inc., filed suit in the Circuit Court for Knox County, Tennessee, on September 17, 1954, seeking damages against the defendant, based upon an alleged breach of contract. Plaintiff alleged that the parties had entered into a written agreement whereby the defendant contracted to publish certain advertising relating to the sale of new and used Lincoln and Mercury automobiles by plaintiff, and that notwithstanding said contract or agreement, the defendant failed and refused to publish the advertising, resulting in the loss of profits which plaintiff would have made from the sale of the automobiles proposed in the unpublished advertisement.

"The case reached issue upon defendant's pleadings, hereinafter stated, and the case was tried before the judge and a jury in the Circuit Court for Knox County on April 28, 1955, and the trial resulted in a verdict and judgment in favor of the plaintiff against the defendant in the sum of Three Thousand Dollars ($3,000.00).

"A motion for a new trial (with amendments) was seasonably made and filed by the defendant, and the same was overruled upon plaintiff's acceptance, under protest, of a remittitur of $1,000.00, as suggested by the trial judge. Thereupon, defendant prayed and was granted an appeal to this Court, and the appeal bond and bill of exceptions were filed and approved within the time allowed.

"The plaintiff's declaration * * * avers that he is the authorized dealer and distributor of Lincoln and Mercury automobiles in Hamblen, Jefferson, Grainger, Cocke and Hancock Counties, Tennessee; that he maintains a garage and sales agency in Morristown, Tennessee, selling, trading and dealing in new and used automobiles, parts and accessories, and operating a repair shop; that the defendant is publisher of 'The Knoxville Journal,' a newspaper in the trade area covered by plaintiff's franchise; that on or about June 19, 1954, plaintiff and defendant entered into a contract whereby plaintiff purchased and defendant sold one hundred inches (100″) of advertising in the classified section of the defendant's newspaper, and that the parties agreed that the advertising would be carried in the June 20, 21 and 22, 1954, issues of 'The Knoxville Journal'; that the defendant, through its agents, servants and employees, prepared and submitted the proposed advertising copy to the plaintiff, who approved the same, and in reliance upon its contract with defendant, 'purchased, ordered and acquired thirty new cars and sixty used car.' Plaintiff avers that the defendant breached its contract in that it failed, neglected and refused to publish the advertising as agreed, all to plaintiff's damage.

\* \* \* \* \* \*

"Thereupon, the defendant filed special pleas to the declaration, as follows:

"(1) Plea of non est factum, sworn to * * * by Charles H. Smith, Jr., Vice-President of the defendant, in which it is stated that the alleged contract was not executed by defendant, or by anyone authorized to bind the defendant in the premises;

"(2) Plea of not guilty;

"(3) Plea that defendant did not owe plaintiff as alleged in the declaration; and

"(4) Plea that defendant did not contract with the plaintiff as alleged in the declaration."

In support of defendant's first contention that there was no material evidence to support the verdict, it is argued that the parties did not enter into a valid enforceable contract whereby the defendant became obligated to publish advertising for plaintiff, because defendant's agent or solicitor to whom the advertising was delivered had no authority to execute the contract in question, and that the trial judge committed error in refusing to sustain defendant's motion for directed verdict made following the introduction of all the evidence.

In ascertaining whether there was any material evidence to support the verdict, we are governed by certain rules heretofore established by decisions of the Appellate Courts of this State. We are required to take the strongest legitimate view of all the evidence to uphold the verdict, disregard all evidence and inferences to the contrary, and if we find there was any material evidence to support the verdict, it must be sustained. Jarratt v. Clinton, 34 Tenn. App. 670, 241 S. W. (2d) 941; D. M. Rose & Co. v. Snyder, 185 Tenn, 499, 206 S. W. (2d) 897, 901.

Only where one conclusion can be reasonably reached from all the evidence and inferences is it proper for a trial court to direct a verdict. Coca-Cola Bottling Works v. Selvidge, 4 Tenn. App. 558; Supreme Liberty Life Ins. Co. v. Pemelton, 24 Tenn. App. 576, 148 S. W. (2d) 1.

Upon a review of the evidence it appears that plaintiff's President, Ralph Doyle, previous to June 18, 1955, conceived the plan of conducting a sale of new and used automobiles at its place of business in Morristown, Tennessee; that at the time plaintiff had several used cars on hand, and 30 new "stripped down" cars on order to be sold at reduced prices. Pursuant to and in furtherance of the sales plan, Doyle decided to run a quarter page advertisement, consisting of 100 inches, for three days, June 20, 21 and 22, in the Classified Advertising Section of the defendant's Knoxville Journal, a daily newspaper with a large circulation throughout the counties of East Tennessee. The term "stripped down" has reference to cars on which there are no extra accessories.

It further appears that before submitting a copy of the advertisement, Doyle made two long distance telephone calls from his office in Morristown to the defendant's Classified Advertising Department and was told by an employee of said Department that the three ads could be run. The first of these two calls was made on June 18th, and the second on Saturday morning, June 19th, at which time Doyle was informed that if he wanted the ad to appear in the Sunday edition of the paper it would be necessary to get it in by 12 o'clock noon, at which time said Department closed on Saturdays; that Doyle immediately left his office and drove to Knoxville where upon arriving at the defendant's Classified Advertising Department, he was referred to Mrs. Sarah Tate, an employee. After some discussion with Mrs. Tate regarding the cost of running the ad for three days, which was $2.60 per inch, and being told by her that he could obtain a better rate by signing a yearly contract, the printed contract in question was signed by both Doyle and Mrs.

Tate, as Clerk, in which Doyle agreed to pay $2.35 per in, or a total of $400 for the three ads.

It further appears that the printed contract not only contained a line for the signature of the defendant's President indicating his approval, but that it also provided under the heading "Terms and Conditions" that "All advertising copy received hereunder will be subject to the approval of rejection by the publisher." According to Doyle, neither of these provisions was called to his attention when the contract was signed, and that defendant's employee, Mrs. Tate, not only accepted the copy of the ad but assured him that it would be run and attached it to the signed contract, a copy of which she turned over to him, and plaintiff's credit was subsequently approved by the defendant.

Thereafter, Doyle returned to his office in Morristown where about 3 o'clock in the afternoon he received a telephone call from Mr. Fred W. Wilson, one of the defendant's employees, informing Doyle that the defendant was in trouble because plaintiff's competitior, Thad Cheatham Motors Inc., the local Lincoln-Mercury dealer, was objecting to the running of the ad and had threatened to cancel all future advertising as well as that of the Ford Motor Company if the defendant's paper ran the ad, and that Wilson told Doyle that Mr. Floyd W. Watson, defendant's Advertising Manager, had instructed Wilson not to run the ad for the above reasons; that instead of defendant's Sunday paper running plaintiff's ad, it carried an ad of equal size for Thad Cheatham Motors Inc., and that by reason of the defendant's refusal to comply with its agreement plaintiff was compelled to cancel an order for 20 of the 30 new automobiles already ordered on which according to Doyle, plaintiff would have made a

profit on each car of from $300 to $400, or a total of $6,000 on the 20 cars.

It also appears that the ad contained nothing objectionable, and that defendant "wanted to run the ad" but that it was "killed" because of the protest of Mr. Thad Cheatham, the local dealer, the defendant's Manager Watson testifying that the running of the ad would have been detrimental to the best interest of said dealer and the Ford Motor Company, whose advertising contracts with the defendant produced annually an admitted income of approximately $20,000.

While it was the defendant's theory which was supported by the testimony of witnesses including Mrs. Tate, that she had no authority to bind defendant on the contract, that only defendant's President and Manager of the Classified Ad Department had such authority, the undisputed evidence showed that when Doyle arrived at this Department and found Mrs. Tate in charge, and it was she who suggested that it would cost less to run the ad if Doyle would sign a contract, and according to Doyle he was not told at the time that the contract had to be approved by other authority. Instead, however, he was given a copy of the signed contract by Mrs. Tate, who accepted the ad and attached thereto a memorandum in her handwriting indicating the dates the ad was to be run, etc., and stating "Contract already signed."

It is apparent that the ad was rejected by the defendant not for lack of authority on the part of Mrs. Tate to sign the contract in question, as insisted on behalf of the defendant, but because of the protest of Thad Cheatham, the local dealer, and from all the evidence and justifiable inferences it was the function of the jury,

under proper instructions, to determine the scope and extent of Mrs. Tate's authority, the applicable rule being stated in Conaway v. New York Life Ins. Co., 171 Tenn. 290, 102 S. W. (2d) 66, as follows:

"We have here an apt illustration of the reason of the well-settled rule that 'the scope and extent of the agent's authority is to be decided from all the facts and circumstances in evidence, and it is to be determined by the triers of the facts,' here the lower courts. And 'the apparent authority of an agent to act as the representative of his principal is also to be gathered from all the facts and circumstances in evidence, and ordinarily this is a fact for the jury's determination.' 2 Am. Jur., p. 360.

"These quotations from Mechem on Agency (2d Ed.), are expressive of general applicable principles:

"Sec. 1987: 'The principal may, either expressly or by implication, put the agent in such a position or charge him with such duties, that the making of representations will fall within the scope of his authority, as where, expressly or by implication, he refers persons to the agent for information or authorizes him to do acts to which the making of representations is a necessary or a usual incident.'

"Sec. 1990: 'The American cases have generally held the principal liable to innocent third persons where the representation was made in the course of the principal's business and apparently for his account and while the agent was acting within the general scope of his authority, even though in the particular case he was secretly abusing his authority and attempting to perpetrate a fraud upon his prin-

cipal or some other person for his own ultimate benefit.'" 171 Tenn. at pp. 304, 305, 102 S. W. (2d) at p. 72.

Next, the defendant asserts that plaintiff was put on notice (1) of the lack of Mrs. Tate's authority by reason of the blank line provided on the contract for approval by the President, and (2) because of the additional provision that "All advertising copy received hereunder will be subject to the approval or rejection by the publisher."

■ Admitting that the defendant, under the provisions of the contract, reserved the right to approve or reject advertising, as insisted, did the action of defendant's agent in turning over to Doyle a copy of the signed contract with assurances that the ad was acceptable and would be run, constitute a waiver of the conditions? Under the circumstances, we think that the issue of whether there was a waiver was for the determination of the jury, 56 Am. Jur., sec. 23, p. 125; 17 C. J. S., Contracts, sec. 630, pp. 1297, 1298, and under our decisions we are bound by the verdict.

■ It seems to be the rule generally that strict performance of a contract by one party may be waived by the other party, and conditions precedent may be waived by the party in whose favor they are made. 12 Am. Jur., sec. 354, pp. 918, 919; 17 C. J. S., Contracts, sec. 491, pp. 992, 993. Furthermore, as previously pointed out, the ad contained nothing objectionable and was rejected not from lack of approval by proper authority, but because of the protest of the local dealer.

Defendant further contends (1) that the judgment is excessive, (2) that no actual damages were proved, (3)

that the verdict was based on speculation and conjecture, and (4) that if recovery is allowed plaintiff is entitled only to nominal damages.

 It appears to be the rule in this State, as generally elsewhere, that lost or expected profits are recoverable as damages for breach of contract, provided they can be proved with reasonable certainty, and are not in fact remote or speculative. Burge Ice Machine Co. v. Strother, 197 Tenn. 391, 273 S. W. (2d) 479; Black v. Love & Amos Coal Co., 30 Tenn. App. 377, 206 S. W. (2d) 432; Hagan v. Nashville Trust Co., 124 Tenn. 93, 136 S. W. 993; McWhirter v. Douglas, 41 Tenn. 591; 15 Am. Jur., sec. 150, p. 558; 25 C. J. S., Damages, secs. 42, 43, pp. 516, 519.

In 15 Am. Jur., the rule is stated, as follows:

"As in the case of damages generally, to warrant a recovery for loss of profits in actions either for breach of contract or for tort, they must be capable of proof with reasonable certainty and no recovery can be had for loss of profits which are uncertain, contingent, conjectural, or speculative. Thus, no recovery can be had for loss of profits where it is uncertain whether any profit at all would have been made by the plaintiff." Sec. 150, p. 558.

 Applying the foregoing rule to the facts of the instant case, we are constrained to sustain the defendant's contention that the amount of the recovery was based on speculation and conjecture; that plaintiff's actual damages, as will hereinafter appear, were not proved with reasonable certainty, plantiff's only witness. Doyle testifying, as follows:

"Q. As a result of the refusal of the defendant to run this ad, what, if anything, did it cost you? A. A promotion sale coming up. I had 30 new cars—

"Mr. Foster: Object. That is not any measure of damages for breach of contract.

"The Court: We will see what he is talking about. Overrule the objection.

"Mr. Foster: Note exception.

"Q. You had 30 new cars coming in, what did you do about that, and what did it cost you to do something about them? A. I canceled an order for 20 of them.

"Mr. Foster: Object to that as being immaterial.

"The Court: See what the connection is. The jury will pass on that.

"Mr. Foster: Note an exception.

"Q. As a result of cancellation, did it cost you anything? A. It cost me profit on 20 cars.

"Mr. Foster: Object to profit on 20 cars.

"The Court: Overruled for the time being.

"Mr. Foster: Note exception.

"Q. Had you got those cars in, Mr. Doyle, what would have been the least profit you made on those 20 cars?

"Mr. Foster: May we excuse the jury a moment and discuss the legal aspects of this case?

"The Court: Let the answer go in. No. I won't excuse the jury.

"Q. Had you gotten those 20 cars in, what would have been your least profit per car? A. It is hard to say on that, profit on automobiles run from $400 to $1,000.

"Q. What would be your least profit per car?

"Mr. Foster: May we have a continuing objection to this line of testimony on the ground that it is an improper method of proving damages in this case.

"The Court: Your objection may continue, and it is overruled, and you may except.

"Mr. Foster: Note exception.

"A. Well, $400 or $500. I just couldn't tell you exactly. Sometimes you lose money on a car.

\* \* \* \* \* \* \*

"Q. After the ad was not run, Mr. Doyle, in addition to the cancellation of this order, did you spend any other money? A. No, except the time I spent going to see them.

"Q. You mean the time coming from Morristown down to talk to Mr. Smith and Mr. Watson? A. Yes.

\* \* \* \* \* \* \*

"Q. At the time you undertook to place this ad in the defendant's paper, state whether or not you had any used cars on hand in your place of business at Moristown? A. Yes, sir.

"Q. This ad that you were placing in the defendant's paper, did it pertain or not to the cars you had on hand in addition to the cars you had on order? A. It pertains to used cars as well as the cars I had ordered."

Though Doyle further testified that plaintiff expected to sell 40 or 50 cars on the strength of the ad, this was mere speculation as was plaintiff's anticipated profits, neither of which could be determined with reasonable certainty. Therefore, no actual damages having been proved, none can be recovered under the authorities heretofore cited.

■ However, we are of the opinion that plaintiff is entitled to nominal damages for breach of the contract. Western Union Tel. Co. v. Potts, 120 Tenn. 37, 113 S. W. 789, 19 L. R. A., N. S., 479; Bradford & Carson v. Montgomery Furniture Co., 115 Tenn. 610, 92 S. W. 1104, 9 L. R. A., N. S., 979; Jones v. Western Union Tel. Co., 101 Tenn. 442, 47 S. W. 699; State v. Ward, 56 Tenn. 100; Lay v. Bayless, 44 Tenn. 246; Seat v. Moreland, 26 Tenn. 575; Johnson v. Jones, 1 Tenn. App. 24. In 15 Am. Jur., it says:

"Upon breach of a valid and binding contract, the law infers some damages, and generally the person guilty of the breach is liable at least for nominal damages, if actual damages cannot be proved. Nominal damages only are recoverable upon the breach of a contract if no actual or substantial damage resulted from the breach or no damage has been or can be shown, as, for example, *where actual damage is uncertain or not susceptible of proof or is too remote, conjectural, and speculative to form the basis of a legal recovery,* * * *." Sec. 7, pp. 393, 394. (Emphasis supplied.)

Accordingly, we sustain the defendant's contention that only nominal damages are recoverable and fix the amount at $300.

Finally, the defendant's numerous assignments complaining (1) of portions of the charge, (2) of the court's refusal to charge several special requests, and (3) of the admission in evidence of Doyle's statements as to the number of cars plaintiff would have sold and the net profits derived therefrom, will be overruled.

It results that the judgment will be reversed in part, modified in part as indicated, and as modified, will be affirmed. The costs will be taxed equally between the parties.

McAmis, P. J. and Hale, J., concur.