**INTERSTATE LIFE & ACCIDENT IN-SURANCE COMPANY, Plaintiff-Appellee,**

v.

**RKO TELERADIO PICTURES, INC., Defendant-Appellant.**

**No. 15004.**

United States Court of Appeals
Sixth Circuit.

June 11, 1963.

Walter P. Armstrong, Jr., and Richard H. Allen, Memphis, Tenn. (Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., of counsel), for appellant.

Thomas R. Price, Memphis, Tenn. (George W. Evans, Chattanooga, Tenn., on the brief, Canada, Russell & Turner, Memphis, Tenn., of counsel), for appellee.

Before WEICK and O'SULLIVAN, Circuit Judges, and DARR, Senior District Judge.

**WEICK, Circuit Judge.**

The pivotal question in this appeal is the amount of damages to be awarded for partial breach of a lease of real property to a television station which lease contained a provision for the payment of rent in station identification announcements.

Interstate entered into a lease agreement with Harding College whereby it agreed to acquire land and construct a new building thereon in Memphis, Tennessee to house Harding's television station. The lease was to commence upon the completion of the building and continue for ten years.

The lessee agreed to pay as rental a minimum of twenty station identification announcements each day with an advertising display which was to include the call letters "WHBQ-TV." The announcements were thus shared by each of the parties taking a portion thereof. They were known as "shared I.D." The pertinent provisions of the lease are set forth in the footnote.[1]

1. "7. Yielding and paying as rent therefor the rent and sums and services due as herein stipulated: as rent for the leased premises the Lessee shall grant the Lessor the right to all station identification announcements except as hereinafter provided, but in no event less than a minimum of twenty (20) station identification announcements each day; each station identification announcement to be a minimum of eight (8) seconds in duration. Said station identification announcements shall be divided throughout each day in such a manner that at least five (5) station identification announcements are scheduled between the hours of 9:00 A.M. and 12:00 Noon, at least five (5) between 12:00 Noon and 3:00 P.M., at least five (5) between 3:00 P.M. and 6:00 P.M., and at least five (5) between 6:00 P.M. and 10:00 P.M. Said station identification announcements shall include an advertising display as requested by the Lessor and approved by the Lessee, said display to include the 'call letters' WHBQ-TV in a legible manner. Verbal identification of Lessor acceptable to and approved by Lessor shall be included in each said station identification announcement. Only the expense of any slides or other advertising material shall be borne by the Lessor. In addition, the Lessor shall have

the right to use one ten (10) minute period each week at times to be agreed upon by the Lessor and the Lessee between the hours of 3:00 P.M. and 10:00 P.M.; said agreed upon times subject to change to a time within the hours stated of equal value within a seven (7) day period without notice. All material, artists and contents of said 10 minute programs shall be subject to the approval of the Lessee, and shall not be used for any commercial purpose other than advertising the Lessor or its products. The Lessee has the right to use for its own purposes, commercial or otherwise, a maximum of twenty (20) station identification announcements per week provided no more than four (4) of these station identification announcements are used in any one given day; and provided further, that no station identification announcement may be used for or sold to any other insurance company whatsoever.

"8. Anything herein to the contrary notwithstanding, the Lessor shall have the right thirty (30) days prior to the beginning of any calendar year to discontinue the method of rent described herein, and to receive as rent in lieu thereof the rent, sums or services derived from whichever of the following two (2) methods is elected by Lessee: (1) The time

The land was acquired at a cost of $30,000 and the building at $112,000. Interstate incurred additional expenses of $9,000. The total cost was $151,000. Shortly after the building was completed Harding College sold its television station to appellant RKO Teleradio Pictures, Inc. and assigned the lease to this company which assumed all the obligations of the lessee.

RKO commenced to operate the television station and furnish the I.D. announcements to Interstate. Under date of December 28, 1956 the manager of RKO wrote Interstate advising that the station had missed certain announcements and offering to supply them. Interstate replied that it was considering the matter and would write further, but failed to do so. It made no complaint until May 1959. It filed suit in the District Court to recover damages in the amount of $700,000 of which $400,000 was for the reasonable value of the omitted announcements and $300,000 for loss of profits. Under date of December 4, 1961, with leave of court, it waived and withdrew its claim for loss of profits.

The case was submitted to a jury which returned a verdict in favor of Interstate and assessed its damages for breach of contract in the amount of $150,000 and awarded it $15,900 for attorney's fees and expenses or a total of $165,900.

In this Court, the principal claim of RKO was that the verdict was grossly excessive. In an eighty page brief, RKO raised twenty points which it claimed required reversal of the District Court's judgment.

The period of time involved in the damage claim was about five years or 1,793 days. RKO admitted that it was required to give a minimum of 34,810 announcements during this period; that it actually delivered 27,496 announcements and was short 7,314. It delivered approximately 15 announcements per day.

Interstate claimed that the shortage amounted to 12,208 or approximately one-third of the station identification announcements called for under the lease.

RKO offered proof in the District Court tending to show that the shortage was inadvertent and unintentional; that it did not have an accounting system at the time for the shared station identification announcements like it had for other advertisers and no check off system against laxity of the traffic clerk who

allotted to the Lessor may be sold by the Lessor to another advertiser or advertisers and the proceeds therefrom be retained by the Lessor, or (2) the said time allotted to the Lessor may be relinquished to the Lessee, in which event the Lessee shall pay an amount equal to the total of the following amounts: (a) estimated annual cost of all real estate taxes and assessments, (b) annual cost of fire and extended coverage insurance in an amount equal to the replacement cost of the building, such insurance to be underwritten by companies approved by the Lessor, (c) an amount equal to the annual depreciation on the total cost of the building less the portion of the cost of the building which shall be borne by the Lessee as provided in paragraph No. 4, depreciation to be computed at the rate of two (2%) per cent per annum, (d) an amount equal to three (3%) per cent of the Lessor's net investment which net investment is defined as the total cost of the leased premises including the land, building and improvements less that por-

tion of the cost borne by the Lessee (as provided in paragraph No. 4) and less the accumulated annual charges for depreciation.

"9. The Lessee shall have an option for a renewal of this lease for a further term of five (5) years or such other term of years as may then be agreed upon by the parties hereto, such option to be exercised at least, three months before the termination of this lease, by mailing postpaid, or delivering to the Lessor, a written notice of the desire of the Lessee to renew said lease. If not so exercised, it shall be forfeited. Said renewal shall be on terms and conditions to be agreed upon at the time the option is exercised, said terms and conditions to be in conformity with the square footage rental charges applicable at that time to buildings of like kind, condition and age in the City of Memphis, Tennessee, similarly located in the Cleveland Street area between Peabody Avenue and North Parkway Boulevard."

scheduled the announcements. It further claimed that the lease called for so many daily announcements that a point of saturation had been reached whereby any announcements in addition to those actually furnished had no value as advertisements, but would serve merely to annoy or irritate listeners.

On some days the station did not broadcast until noon and hence could not schedule any announcements in the morning. Interstate asserts that it makes no claim with respect to announcements not scheduled when the station was not on the air.

There was no evidence that RKO during the time in question sold to others any of the contracted for station identification announcements. During this period Interstate made reports to the Department of Insurance and Banking of the State of Tennessee and filed federal income tax returns which showed rental income received by it from the leased property in the annual amount of $9,600. This identical figure can be obtained by computing the cash rent in accordance with the formula provided in the second alternative in Paragraph 8 of the lease.

It was Interstate's contention that it was entitled to recover as damages the amount charged other advertisers by RKO for spot announcements. Interstate used the highest discount rate shown on RKO's rate cards which ranged from 25% to 60% and arrived at a value of $323,243.07 for the announcements not delivered or an average of $26.48 per announcement.

If the value of $26.48 placed by Interstate on each announcement is correct, then Interstate actually received rent for the five-year period of $598,500.96 ($26.48 × 22,602). To this should be added the amount of the verdict of $150,-000 making the total rent for the five-year period of $748,500.96. The rental for the 10-year period would be twice this amount or $1,497,001.92.

This would be a fairly good return on an investment of only $151,000, particularly since Interstate still owns its land and the building which has depreciated at the agreed rate of 2% annually or $12,000 over the five-year period or $24,000 in 10 years.

To say that this was within the contemplation of Interstate and Harding College at the time they entered into the lease requires a wild stretch of the imagination. The alternative annual cash rent of $9,600, computed under the provisions of Paragraph 8 of the lease, certainly does not support this contention. Nor does Paragraph 9 which provided an option for renewal of the lease at a rental to be determined "in conformity with the square footage rental charges applicable at that time to buildings of like kind, condition and age in the City of Memphis * * *."

■ Under Tennessee law, the damages recoverable for breach of contract are "such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is such as might naturally be expected to follow its violation." Western Union Telegraph Co. v. Green, 153 Tenn. 59, 64, 281 S.W. 778, 780, 48 A.L.R. 301; Illinois Central R. R. Co. v. Johnson & Fleming, 116 Tenn. 624, 94 S.W. 600; Morristown Lincoln Mercury, Inc. v. Lotspeich Pub. Co., 42 Tenn.App. 92, 298 S.W.2d 788; 15 Am.Jur., Damages § 52 p. 451.

Morristown Lincoln Mercury, supra, was an action by a dealer against a newspaper for breach of contract to publish an advertisement for the sale of automobiles. The dealer claimed that he had contracted to purchase the automobiles but was unable to sell them at a profit because of the refusal of the newspaper to publish the advertisement. The appellate court held that the claim for loss of profits in the sale of the automobiles was too conjectural to allow recovery therefor and awarded nominal damages only. The court said: "Therefore, no actual damages having been proved, none can be recovered under the authorities heretofore cited."

Undoubtedly the reason Interstate accepted the television announcements in

lieu of cash rent was to secure new business through advertising thereby increasing its profits, but we cannot consider loss of profits because Interstate has waived that claim. Its waiver was probably influenced by Tennessee law which required more proof of loss of profits than mere conjecture or guesswork.

To prove its damages, Interstate offered in evidence, over the objection of RKO, rate cards which indicated the prices at which advertising was sold by RKO to others in the quantities stated thereon. None of the cards dealt with shared station identification announcements or quantities as large as involved in the case at bar.

■ We think this evidence was inadmissible. Interstate's measure of damages was not the price for which RKO could sell advertising to others because, under the terms of the lease, Interstate had no right to sell the announcements to which it was entitled. If RKO were suing an advertiser for damages for failure to take advertising under a contract, it could not have recovered the full contract price when it had not furnished the advertising. This is so because the cost of furnishing the advertisement would have to be taken into account. Not all of the contract price represented

profit. On the other hand, an advertiser who had not received all of the agreed announcements for which he had paid in cash could certainly recover back the proportion of his payment applicable to the omitted announcements even though he could prove no other damage.

As we view the provisions of Paragraph 8 of the lease, Interstate could discontinue taking the announcements and accept in lieu thereof either of the following two methods *elected by RKO:*

1. Sell its allotted time to other advertisers, or

2. receive rent in cash computed as provided for therein.

Interstate *did not* discontinue taking the announcements, but on the contrary continued to receive them. It did not want RKO to supply the omitted announcements. It wanted cash instead.

The trouble here is that Interstate does not want the cash rent to be computed as stipulated in the lease, but insists on obtaining in cash the fair and reasonable value of the announcements. This it cannot have because RKO did not elect to permit Interstate to sell the announcements.

■ The Trial Judge instructed the jury in part as set forth in the footnote.[2] We think it was error for the

---

2. "In awarding compensatory damages, the object is to place the plaintiff in the same position, in terms of money, as it would have been in had the contract not been breached. Plaintiff here is not suing for restitution or to have returned what it paid out under the contract, but rather is suing for and is entitled to have the benefit of its bargain—its expectancy, so to speak. Therefore, in arriving at just compensation for the plaintiff for the breach of contract involved here, it is necessary for you to place a reasonable and fair value on the shared station identification announcements which you find were not delivered in breach of the contract. At the same time, members of the jury, since plaintiff is not entitled to be placed in a better position, in terms of money, than it would have been in had the contract not been breached, plaintiff in no event is entitled to recover a sum greater than the amount that you find it

has actually been financially harmed by such breach of contract. In other words, plaintiff should not be allowed to profit from any such breach of contract; the object is, as I say, in awarding any damages, to make the plaintiff as well off but no better off than it would have been had the contract not been breached.

"Now the plaintiff has offered in evidence, in support of its theory of the value of the announcements involved and in support of its theory of the amount of damage incurred, the rate cards issued by the defendant television station as well as expert testimony and other evidence, and the Court charges you that you may consider that evidence in arriving at the reasonable and fair value of the television time involved and in arriving at the financial harm the plaintiff suffered, if any, as a result of the breach of contract involved.

"On the other hand, defendant has offered evidence as to discounts allowable

court to instruct the jury that the plaintiff was entitled to the benefit of its bargain and could consider the rate cards in arriving at the fair and reasonable value of the television time. The fair and reasonable value of the television time was not an issue in this case. The net effect of all this undoubtedly influenced the jury to return a large verdict. RKO objected to this portion of the charge and also tendered a special request to charge which was denied.

■ In our judgment, the only fair measure of damages to be applied in this case is the formula agreed upon by the parties in the lease for annual cash rental. It represents what the parties thought at the time was the fair and reasonable rental value of the property payable in cash. This view is strengthened

by the conduct of Interstate in reporting the rents computed in conformity therewith amounting to $9,600 annually in its federal income tax returns.

Using this formula, the computation of Interstate's damages becomes simple. Interstate received all but one-third of the announcements to which it was entitled. Its damage for one year would be one-third of $9,600 or $3,200 and for five years it would amount to $16,000. There was no evidence of other damages.

■■ In our opinion, because of the provisions of the lease, Interstate was entitled to collect its reasonable counsel fees and expenses in the amount of $15,900. RKO did not dispute the reasonableness of the attorney's fees or expenses, but questioned its liability for the fees on the ground that there was no

for large amounts of television time, evidence as to another actual sale of television time, evidence of what plaintiff paid for this television time, and other evidence in support of its theory of the value of the announcements involved, and the Court charges you that you may consider that evidence in arriving at the reasonable and fair value of the announcements involved.

"The Court has heretofore charged you that plaintiff is entitled to be made monetarily as well off but no better off than it would have been had the contract been carried out. This is a general principle of the law of damages which is applicable here. This being the law, and since under the lease contract plaintiff was entitled to receive announcements and since the right to receive announcements could not be sold or otherwise transferred by plaintiff, it follows that, in determining the amount of any damages to which plaintiff is entitled, you must consider the actual damaging effect on the plaintiff resulting from the failure to receive the announcements involved. In support of its theory that plaintiff suffered little or no damaging effect as a result of the failure of defendant to deliver the announcements with which we are dealing, defendant has offered evidence of the effect of the use of announcements under the conditions and circumstances involved here, and you may consider this evidence in arriving at the amount of damages plaintiff is entitled to recover for the breaches of contract involved here.

"Now, members of the jury, in arriving at the amount of damages, if any, plaintiff is entitled to recover, there is another principle of law of damages as to which the Court will charge you. This principle is that a party which has suffered a breach of contract may recover, for such breach, damages and only such damages as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of a breach of it. In determining what damages can reasonably be said to have been in the contemplation of both parties, at the time they made the contract, as a probable result of the breach of it, you may consider all the facts and circumstances which have been admitted in evidence in this case, including all of the terms of the contract itself.

"Members of the jury, while the amount of damages a plaintiff is entitled to recover may not be based on speculation, guess or conjecture, at the same time in cases of this kind, the amount of damages suffered may be uncertain, but uncertainty as to the exact amount is no reason for denying recovery. The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not prevent recovery. The law does not require exactness of computation in suits involving questions of damages growing out of contracts. Damages are allowable where they are not in fact remote or speculative, and are proved to a reasonable certainty."

evidence of any obligation on the part of Interstate to pay for the same. The District Judge thought there was such evidence and submitted the issue to the jury. We think he was correct in so doing.

It follows that the verdict and judgment were excessive to the extent that they exceeded the amount of $31,900 which was the amount of Interstate's damages, attorney's fees and expenses. We do not find that the verdict was influenced by passion and prejudice.

In view of this disposition, it is unnecessary to pass upon the other errors claimed.

The judgment will, therefore, be reversed and the case remanded to the District Court for a new trial unless Interstate, within twenty days from the date hereof, remits from its judgment the sum of $134,000 and files the remittitur with the Clerk of this Court. If said remittitur is timely filed then the judgment will be affirmed in the amount of $31,900 with interest at 6% per annum from February 1, 1962.