# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

May 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

FORKLIFT SYSTEMS, INC., )
)
    Plaintiff/Appellee, )
) Appeal No.
) 01-A-01-9804-CH-00220
VS. )
) Davidson Chancery
) No. 96-3369-II
WERNER ENTERPRISES, )
)
    Defendant/Appellant. )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR

DOUGLAS E. JONES
Suite 701
501 Union Street
Nashville, Tennessee 37219
    Attorney for Plaintiff/Appellee

JAMES D. KAY, JR.
BRIDGETT A. WOHLPART
Suite 340M, Washington Square Two
222 Second Avenue North
Nashville, Tennessee 37201

MODIFIED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

In this negligence case, the trial court granted the plaintiff damages for lost profits. Because we think the method used for calculating those damages was flawed, we modify the award.

## I. The Facts

The facts of this case are straightforward and undisputed. At 6:30 in the morning on January 3, 1995, the driver of a 45 foot semi-tractor trailer truck owned and operated by defendant Werner Enterprises attempted to turn into the driveway of plaintiff Forklift Enterprises. His turn was wide, and he accidentally knocked down an electrical service pole on Elm Hill Pike. The impact destroyed a transformer that supplied power to the plaintiff company. The fire department subsequently sealed off Elm Hill Pike, and ordered that Forklift's building be vacated, because of potential danger from dangling electrical lines.

Power was not restored until 11:00 A.M. the following day. During the period the power was off, the plaintiff was unable to perform any of its normal business of selling, renting and repairing forklifts and forklift parts. The only other facility operated by the plaintiff at that time was in Louisville, Kentucky. That facility also was shut down for the same period, because with the loss of electricity, the computer connection between the two facilities was severed.

Forklift Systems filed suit for negligence on October 28, 1996. The case went to trial on March 5, 1998. Werner agreed that it was liable for damages, and the parties stipulated to damages of $285 for electrical repairs, and $8,065 in wages that Forklift had to pay to its employees during the day and a half during which they were prevented from doing productive work. The plaintiff also claimed damages for lost profits and opportunities.

The trial court relied upon a statement of earnings and retained earnings submitted by Forklift Systems (the sole exhibit in this case) as the basis for that portion of its award. The court found that the plaintiff was entitled to $10,342 for lost profits and lost opportunities. Adding these sums to the $285 and $8,065 stipulated to by the parties, the Court entered a judgment against Werner Enterprises totaling $18,692. This appeal followed.

## II.  Lost Profits

Lost profits may be a legitimate element of damages in cases based either upon contract or upon tort. However, they are only recoverable when the amount of damages can be proven with reasonable certainty, and are not remote or speculative. *Morristown Lincoln-Mercury v. Roy N. Lotspeich Publishing Co.,* 298 S.W.2d 788 (Tenn. App. 1956); *McClain v. Kimbrough Construction Co.,* 806 S.W.2d 194, 200 (Tenn. App. 1990).

When the plaintiff is an established business with a consistent earnings history, the profit record from the most recent years can usually supply the requisite degree of certainty. The general rule is that the award must be based upon net profit. *American Bldgs. Co. v. DBH Attachments, Inc.,* 676 S.W.2d 558 (Tenn. App. 1984)*; Cecil Corley Motor Co. v. General Motors,* 380 F.Supp 819 (D.C. Tenn. 1974). However, in this case the trial court based its calculation upon Forklift's gross profit. Gross profit, stated in its most basic form, is the difference between the revenue derived from the sale of goods and the cost to the seller of those goods.

The trial court's approach excludes from the profit equation the cost of doing business (overhead). Thus, over $2 million of "selling, general and administrative expenses" which the defendant incurred each year, and which had a profound negative impact upon its net profit, became a nullity under the trial court's approach.

The argument can be made that insofar as Forklift's overhead expenses are fixed, then the gross profit from each additional sale made or missed will translate into an exactly equivalent increase or decrease in net profit. But there is no proof in the record as to which of its overhead expenses are fixed (other than salaries) and which expenses vary with the volume of business. We therefore see no reason to deviate from the rule that requires us to take overhead into account in calculating lost profits.

We do believe, however, that there is sufficient reason to exclude from the equation expenses that are completely unrelated to Forklift's daily operations, such as a $125,000 payment for a one-time litigation settlement which Forklift entered into in 1995. We therefore base our revised award upon Forklift's operating income, a figure calculated by subtracting the company's overhead from its gross profit, before factoring in the above-mentioned settlement.

Applying the chancellor's methodology to operating income, we arrive at the following result: The average annual operating income for 1994 and 1995 was $169,540. When we divide this by 264 working days per year, we get $642.20 per business day. Multiplying this by the 1.5 days that Forklift's operation was affected results in lost profits of $963.30. To this figure we add the stipulated damages of $285 for the electrical repairs and $8,065 for employee wages, for a total judgment of $9,313.30.

### III. Lost Opportunities

In addition to the award for lost profits, the trial court also awarded the plaintiff $4,478 for lost opportunities. We reverse this part of the judgment, because although the trial court made a good-faith attempt to quantify the purported loss, we believe the basis for it to be too speculative.

Forklift's president testified that a major customer was unable to buy a part from the company during the time in question, and subsequently ceased doing business with the plaintiff. However, he was unable to state categorically that the loss of that account was due to the shutdown. The trial court did not cite this testimony in its judgment, and in fact it based the award upon different considerations.

Forklift's sales revenues increased between 1994 and 1995 by over $1.1 million. The court concluded that while its doors were closed, the company lost the opportunity to increase its sales by an amount equal to the average daily increase between 1994 and 1995, which it calculated to be the above-mentioned $4,478. Aside from the dubious nature of this proposition, we must note that the cost of goods sold increased by almost $1.2 million in 1995, resulting in an actual decline in Forklift's operating income by about one-third (almost $60,000) despite the increase in sales. We thus find there to be no rational basis for a lost opportunities damage award.

## IV.

The judgment of the trial court is reduced to $9,313.30. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JUDGE


_____
WILLIAM B. CAIN, JUDGE