IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2002 Session

## WATSON & SON LANDSCAPING, PARTNERS, JAMES T. WATSON, GENERAL PARTNER
v.
## POWER EQUIPMENT COMPANY

Appeal from the Chancery Court for Madison County
No. 51954     Joe C. Morris, Chancellor

No. W2002-00136-COA-R3-CV - Filed April 29, 2003

This is a sales/UCC case. A landscaper contracted to purchase a used piece of machinery, an excavator, from an equipment company. The excavator had a defective hydraulic system. Under the terms of the sales contract, the equipment company was to repair the defective hydraulic system. The equipment company attempted to do so and delivered the excavator to the landscaper. The hydraulic system, however, did not work properly and the equipment company was unable to repair the excavator to the landscaper's satisfaction. The landscaper then had the excavator repaired by a third party. The landscaper sued the equipment company for failure to satisfy a condition precedent to the contract, and for breach of contract. The trial court awarded actual damages for the difference in value between the excavator bargained for and the excavator actually received, as well as consequential damages. The equipment company appeals. We modify the actual damages to the cost to repair the excavator, and we reverse the award of consequential damages, finding that the proof of consequential damages was too speculative to support such an award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified in Part and Reversed in Part**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Charles C. Exum, Jackson, Tennessee, for appellant, Power Equipment Company.

P. Kevin Carter and Bradley G. Kirk, Lexington, Tennessee, for appellee, Watson & Son Landscaping, Partners, James T. Watson, General Partner.

**OPINION**

On April 3, 1995, Watson & Son Landscaping ("Watson") contracted to purchase a used piece of landscaping machinery, an excavator, from Power Equipment Company ("Power Equipment"). The purchase price was $57,000. It is undisputed that the excavator had hydraulic problems at the time the parties entered into the sales contract. Indeed, the contract stipulated that Power Equipment would "check . . . [and] correct" the hydraulic system prior to delivery of the excavator. The contract, entitled "Retail Order Form," was signed by Watson. The Retail Order Form included on its face a merger, or "entire agreement," clause, stating: "ENTIRE AGREEMENT: Purchaser agrees that this order including the ADDITIONAL PROVISIONS PRINTED ON THE REVERSE hereof, which he has read and to which he agrees, contains the entire agreement relating to the sale of said property."

A week after Power Equipment delivered the excavator, it sent Watson an additional document. Power Equipment calls the document a "Final Invoice" and Watson calls it a "Billing Ticket." Regardless of how it is characterized, the reverse side of the document contained a clause stating that: "THE LESSOR SHALL NOT IN ANY EVENT BE HELD LIABLE FOR ANY SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RESULTING FROM THE DEMONSTRATION, OPERATION AND/OR USE OF THE EQUIPMENT LEASED HEREIN."

After the excavator was delivered, it continued to have hydraulic problems. Power Equipment expended over $20,000 attempting to repair the excavator. For a six-week period while Power Equipment attempted to repair the excavator, it loaned another excavator to Watson. On November 9, 1995, Watson, through counsel, attempted to revoke acceptance of the excavator. Power Equipment refused to take the excavator back. Later, in 1996, Watson had a third party repair the hydraulic system, at a cost of $16,899.42.

In June 1996, Watson filed suit against Power Equipment. Watson alleged that proper repair of the excavator's hydraulic system was a condition precedent to the formation of the contract, and asserted that Power Equipment had never satisfied the condition precedent. In the alternative, Watson alleged that Power Equipment's failure to repair the hydraulic system constituted a breach of contract. Watson sought actual damages, loss of profits and business, reasonable attorney's fees, and court costs.

A bench trial was held on December 4, 2000. At the trial, James Watson, a partner in Watson & Son Landscaping, testified that, after Power Equipment was unable to repair the excavator, he spent over $18,000 having a third party repair it. He also testified that, approximately two years after the purchase, another equipment dealer offered him a $20,000 trade-in allowance for the excavator. He asserted that because of the defective excavator, he was unable to complete a job on which he had been working, a land development partnership project fell through, and he had to forego work for a railroad. With regard to the railroad work, Watson testified that he would have worked forty hours per week for three months at a net profit of $50 per hour. There was no testimony or other

evidence regarding monies lost from the land development project or the job that he was forced to quit working because of the defective excavator. Finally, he testified that his business profits for the years 1994-1997 were $75,741, $18,258, ($57,641),[1] and $97,301 respectively. He asserted that the drop in income from 1994 to 1995 was due solely to the defective excavator.

Watson also called the owner of a construction company, Andy Autry ("Autry"), as a witness. Autry testified that, in September 1995, he asked Watson to assist him in doing work for a railroad that he estimated would have taken three months to complete at $75 per hour. Autry said that he "did not get the job," and later explained that he "had to give the job up, because [Watson] could never come help me."

At the conclusion of the trial, the trial judge awarded Watson $37,000 in actual damages, the difference between what Watson paid for the excavator in 1995 and the trade-in value offered to Watson in 1997. The trial court stated:

> . . . . At the time of the repairs, the Plaintiff tried to trade the excavator and was offered $20,000.00 as a trade in. . . . The Plaintiff paid $57,000 for the excavator, incurring actual damages of $37,000 between the purchase price and the resulting value of the excavator without the Defendants satisfying the condition of repairing the hydraulic stalling.

The trial court found that the waiver of consequential damages in the Final Invoice/Billing Ticket was not part of the contract between the parties because "[the] provision was not in the original handwritten contract, nor was it initialed or pointed out to the Plaintiffs when they signed the invoice. . . . The type was small and not easy to read, therefore, it is not part of the contract." Hence, the trial court awarded Watson $57,483 in consequential damages, measured by the drop in Watson's profits from 1994 to 1995, as reflected in his income tax returns. The trial judge stated: "The year [Watson] began using the excavator, his income dropped from $75,741 to $18,258, because of the problems with the excavator. . . . The Plaintiffs were damaged as a result of the Defendants' failure to repair the excavator or return their money in the amount of $57,483, in 1995." Finally, the trial court concluded:

> The Defendants breached their contract by failing to satisfy the stated condition in the contract of repairing and correcting the stalling problem. The Defendants' breach resulted in actual damages of $37,000 for the drop in the value of the excavator, determined at the time the plaintiffs notified the Defendants they had not repaired or corrected the stalling problem and demanded a refund of their money. The Plaintiffs

---

[1]The trial judge indicated that Watson's 1996 profits were $57,641. When asked at trial what his 1996 profits were, James Watson responded: "This is not good. This is minus $57,641." Additionally, Watson's IRS Form 1065 for 1996 indicates his profits were actually a loss, that is, ($57,641), not $57,641.

incurred consequential damages of $57,483, resulting from a loss of jobs and down
time from the failure of the Defendants to repair and correct the stalling problem.

Power Equipment later moved to alter or amend the judgment or for a new trial. This motion was
denied. Power Equipment now appeals the decision of the trial court.

On appeal, Power Equipment argues that the trial court incorrectly measured the damages
and that the waiver of consequential damages included in the Final Invoice/Billing Ticket was valid.
In the alternative, if consequential damages are appropriate, Power Equipment contends that
Watson's proof of lost profits was speculative, and therefore insufficient to support an award.

Because this case was heard by the trial court sitting without a jury, it is reviewed *de novo*
upon the record with a presumption of the correctness of the findings of fact by the trial court, unless
the evidence preponderates against them. **See** Tenn. R. App. P. 13(d); **Wright v. City of Knoxville**,
898 S.W.2d 177, 181 (Tenn. 1995). Questions of law, however, are reviewed *de novo* with no
presumption of correctness. **Burlew v. Burlew**, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted).
Power Equipment first argues that the trial court erred in awarding Watson actual damages
in the amount of $37,000. It is undisputed that this case involves the sale of goods as defined in the
Tennessee Uniform Commercial Code ("UCC"). Power Equipment asserts that the trial court should
have awarded damages based on breach of warranty because its promise to repair the hydraulic
system was an express warranty under section 47-2-313 of the UCC. Section 47-2-313 states in part:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates
to the goods and becomes part of the basis of the bargain creates an express warranty
that the goods shall conform to the affirmation or promise.

Tenn. Code Ann. § 47-2-313 (2001). Watson, on the other hand, argues that the proof was of a
breach of contract, in that Watson did not receive the excavator for which it had bargained.
Consequently, Watson contends that the trial court's award of damages was appropriate under
section 47-2-608 of the UCC,[2] which invokes section 47-2-713. Section 47-2-713 provides for

---

[2]Section 47-2-608 states:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity
substantially impairs its value to him if he has accepted it:

(a) on the reasonable assumption that its nonconformity would be cured and it has not been
seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by
the difficulty of discovery before acceptance or by the seller's assurances.

(continued...)

damages in the amount of "the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages . . . ." Tenn. Code Ann. § 47-2-713 (2001).

In examining the sales contract in this case, it is clear that, under Section 47-2-313 of the UCC, Power Equipment's promise to repair the excavator's hydraulic system was an "affirmation of fact or promise made by the seller to the buyer which relate[d] to the goods and [became] part of the basis of the bargain . . . ." Thus, the promise to repair the hydraulic system of the excavator was an express warranty. The express warranty was breached when Power Equipment failed to properly repair the hydraulic system.

The damages recoverable for breach of an express warranty are set forth in section 47-2-714(2) of the UCC. This provision states that: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." As evidenced by the Retail Order Form, the value of the excavator as warranted was $57,000. As to the value of the excavator as received by Watson, the only proof adduced by Watson was the trade-in value offered by an equipment dealer two years after the purchase, during which time Watson had the excavator repaired and used it. This proof is insufficient to ascertain the difference in value between what was bargained for and what was received at the time the parties executed the contract. On the other hand, the proof of the cost to Watson of having a third party do what Power Equipment warranted, that is, repair the excavator's hydraulic system, was definite. ***See Simpson v. Beaverwood Mobile Home Sales, Inc.***, Ca No. 141, 1990 Tenn. App. LEXIS 350, at *13-14 (Tenn. Ct. App. May 15, 1990) (using repair cost to determine value of the good as delivered); 1 White and Summers, *Uniform Commercial Code* § 10-2, at 554-55 (4th ed. 1995).[3] The proof at trial indicates that it cost Watson $16,899.42 to have the

---

[2](...continued)

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Tenn. Code Ann. § 47-2-608 (2001).

[3]White and Summers states:

A common objective measurement of the difference in value as is and as warranted is the cost of repair or replacement. If a buyer accepts a truck with a defective radiator, a good measure of the difference between the value of the truck as warranted and its value as delivered is the price of a new radiator. . . .

1 White and Summers, *Uniform Commercial Code* § 10-2, at 554-55 (4th ed. 1995) (footnotes omitted).

excavator's hydraulic problems repaired.[4]  Consequently, the award of actual damages must be modified from $37,000 to $16,899.42.

Power Equipment argues next that Watson's proof of lost profits at trial was speculative, and therefore insufficient to support an award of consequential damages.  Under Tennessee law, lost profits are recoverable for breach of contract when they can be proven with reasonable certainty and are not remote or speculative.  ***Gen. Constr. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church***, No. W2001-01588-COA-R3-CV, 2002 Tenn. App. LEXIS 874, at *25 (Tenn. Ct. App. Dec. 10, 2002); ***Morristown Linconln-Mercury, Inc. v. Roy N. Lotspeich Publ'g Co.***, 298 S.W.2d 788, 793 (Tenn. Ct. App. 1956).  "No recovery can be had for loss of profits where it is uncertain whether any profit at all would have been made by the plaintiff." ***Morristown Lincoln-Mercury, Inc.***, 298 S.W.2d at 793 (citation omitted).  "The reasonable certainty requirement does not require mathematical precision, but rather sufficient proof to enable the trier of fact to make a fair and reasonable assessment of the damages."  ***E. Sky Prods. v. Ram Graphics, Inc.***, No. 01-A-01-9305-CH-00215, 1994 Tenn. App. LEXIS 654, at *10 (Tenn. Ct. App. Nov. 16, 1994) (citations omitted).

At the trial, James Watson testified that he was prevented from participating in a land development project because of the failure of the excavator's hydraulic system.  He acknowledged, however, that he would not have made money until the land was resold, and that he could not know whether he would have made any money on the project.  With regard to the job that Watson had to quit because of the excavator's failure, James Watson estimated that he lost two to three weeks of work, but did not indicate what his hourly rate was for this job, nor what his profits would have been.  Moreover, during a portion of the time in which Power Equipment was attempting to repair the excavator, Watson had the use of a loaned excavator.  Under all of these circumstances, the proof is simply too speculative to support Watson's assertion that the *entire* difference in its income between 1994 and 1995 is attributable to Power Equipment's failure to repair the excavator's hydraulic system.  Accordingly, the trial court's award of consequential damages in the form of lost profits must be reversed.

Based on this determination, it is unnecessary to address the issue of the validity of the waiver of consequential damages clause in Power Equipment's Final Invoice/Billing Ticket.

---

[4]The trial court found that Watson repaired the excavator for $19,069.15.  James Watson testified, however, that invoices offered into proof in the amounts of $2,101.03 and $65.70 were not related to the hydraulic system; thus, the total repair cost of $16,899.42.

The judgment of the trial court is modified in part and reversed in part as set forth above. Costs are taxed equally to appellant, Power Equipment Company, and its surety, and appellee, Watson & Son Landscaping, Partners, James T. Watson, General Partner, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE