DOMESTIC SEWING MACHINE COMPANY *v.* R. A. JACKSON, S. T. ATKIN, J. W. GAUT and R. F. GAUT.

1, PRINCIPAL AND SURETY. *Previous indebtedness.* A failure to disclose to the sureties the previous indebtedness of their principal, when not requested to do so, is no evidence of fraud.

2. SAME. *Discharge of surety.* To hold the surety was discharged because of the omission of the creditor to advise him of the previous transactions between the debtor and creditor, in the absence of any

inquiry on the subject, would establish a rule that would make instruments requiring a surety of little value.

3. SAME. *Liability caused by act of creditor.* If by any act of the creditor the surety's liability is increased beyond what it was at the time he became bound, he will be discharged.

4. SAME. *Concealment. When it is fraudulent.* Concealment or failure to disclose becomes fraudulent only when it is the duty of a party having knowledge of the facts, to disclose them to the other party.

5. SAME. *When it is one's duty to disclose.* All the instances, in which the duty to disclose exists, and in which a concealment is therefore fraudulent, may be reduced to three classes:
   1. Where there is a previous definite fiduciary relation between the parties.
   2. Where it appears one or each of the parties to the contract expressly repose a trust and confidence in the other.
   3. Where the contract or transaction is intrinsically fiduciary, and calls for perfect good faith. A contract of insurance is an example of this class.

6. SAME. *Non-disclosure in insurance cases.* The strict rule in respect to non-disclosures, applied in insurance cases, does not extend to the contracts of suretyship and guaranty.

7. SAME. *Disclosure. Duty when inquiry is made.* If inquired of, the creditor is bound to answer truthfully. But not being asked, he is not forced to disclose any circumstance in connection with the particular transaction in which he is about to engage which will render the position of the surety more hazardous, or to inform him of any matter affecting the general credit of the debtor.

---

FROM KNOX.

---

Appeal from the Chancery Court at Knoxville. M. L. HALL, J., presiding by interchange.

JAMES COMFORT and A. S. PROSSER for complainants.

HENDERSON & JOUROLMON and WEBB & McCLUNG for defendants.

DEADERICK, C. J., delivered the opinion of the court.

This case was brought to this court from the chancery court at Knoxville, by appeals of S. T. Atkin, J. W. and R. F. Gaut.

The bill was filed in December, 1880, to hold Atkin and J. W. Gaut liable as sureties for certain notes, aggregating some $700 or $800, upon which complainant had obtained judgment against defendant, Jackson, as principal and sole obligor.

The bill alleges that prior to October 31, 1876, complainant had been selling defendant, Jackson, on credit, "sewing machines and appurtenances," and on that day said Jackson and said Atkin and J. W. Gaut executed a bond, which is exhibited with the bill, in the sum of $2,000, binding the obligors to pay complainant all indebtedness that might thereafter accrue against said Jackson for sewing machines and appurtenances bought by him of complainants. The bill sets out the balance due upon purchases made after the execution of said obligation or bond, up to July 12, 1877, after which time no other purchases were made.

The answer admits the sale of machines to defendant, Jackson, before and after October 31, 1876, and that J. W. Gaut and Atkin signed the bond as Jackson's sureties, and they insist that said bond is void because of the fraudulent devices used by complainant in obtaining it. Defendants, Atkin and J. W. Gaut, deny their liability for any part of the indebtedness of Jackson.

The grounds upon which said Atkin and J. W. Gaut resist liability on their bond, are that Jackson, prior to October 31, 1876, the date of said bond, was clerk in the store of Hodge, Clinton & Co., at Knoxville, and was then selling machines for complainants, and said Jackson fell in debt to complainants about $1,000: said firm of Hodge, Clinton & Co. were Jackson's guarantors or sureties, and they had failed, and Jackson could not pay. An agent of complainants, after failure to secure the balance due from Jackson, agreed to continue to furnish Jackson machines, upon his executing bond with security, with the design as averred to use the means realized on the new business to pay the prior indebtedness, and to make the sureties on the new sales liable to pay the new debts.

Defendants allege they did not know of the existing indebtedness of Jackson to complainants, upon previous tranasctions, at the time they signed the bond, and it was a fraud in complainants not to communicate to them the facts in relation thereto; and that all, or nearly all, of the proceeds of the new business were applied to the old indebtedness, leaving all, or nearly all, of the later purchases unpaid. Defendants aver that they had confidence in Jackson's honesty, and supposed he would apply the proceeds of his sales after the execution of the bond to liabilities for which they had become his sureties. It is averred that respondents were ignorant of the misappropriation of proceeds of new purchases, and of the fact of indebtedness of Jackson, and would not have become his

surety if such fact had not been intentionally and fraudulently concealed from them.

Respondents, in their answer, demanded a jury to try the issues of fact. in the cause.

In September, 1877, defendant, Jackson, conveyed to R. L. Gaut, in trust, certain interest in real estate in Knoxville, to secure and indemnify defendants, Atkin and J. W. Gaut, as sureties as aforesaid. R. L. Gaut is, for this reason, made a defendant to the bill, in order that said real estate may be subjected to sale.

A jury was empanneled, a declaration filed by complainant, and pleas filed by defendants. The only plea necessary to be considered, is the second, as it is not contended that the others are maintainable. The declaration is upon the bond, with suitable averments of breaches by Jackson and his sureties. The second plea is, "the defendants say that the said bond was procured by the said complainants from said defendants by fraud, covin and misrepresentation, wherefore, they say that said bond is void in law, and this they are ready to verify."

The issues were submitted to one jury who disagreed, and were discharged. At a subsequent term a trial was had, and the jury returned a verdict for complainants on all the issues, and a new trial being refused, final decree was pronounced in favor of complainants, and defendants, Gauts and Atkin, have appealed.

The Referees recommend a reversal of the decree, and complainants except.

Sewing Machine Company *v.* Jackson, Atkin and Gaut.

The whole question turns upon the correctness of the judge's charge to the jury. The second plea was treated by the parties and the court as sufficient to allow proof of facts tending to establish the fraud pleaded.

His Honor. charged the jury as follows: "It is insisted that if Potterfield, plaintiffs' agent, at the time of the execution of the bond, knew of Jackson's indebtedness to plaintiffs, previous to that date, and had opportunity to disclose that fact to defendants before they signed the bond, and failed to do so, this would avoid the bond on the ground of fraud."

Upon this subject, the court said: "I charge you that if the evidence shows that Potterfield was interrogated as to this matter, or requested to give information thereon, it would then have been obligatory on him to have given truthfully all the knowledge he possessed on the subject, and if he failed to do so, or concealed the truth under these circumstances, then the defendants would not be liable on the bond, and this issue should be found for them. But if no information was sought of Potterfield on this matter, then the fact that he did not disclose it, was of itself no act of fraud, and no act of fraud can be inferred from his failure to disclose it without request to do so, although he may have known the fact, and had opportunity to disclose it."

The court also charged the jury that the debtor had the right, in the absence of any contract to the contrary, to direct upon which of two or more debts a payment should be applied. If he does not direct, the creditor would have a right to apply it to others,

and the application by the creditor to the old debt would not discharge sureties on the new debts.

Two cases in our courts have been cited by defendants in support of the proposition, that the failure by complainant's agent, who took the bond, to inform them of the existing indebtedness of Jackson at that time, was a fraudulent concealment of a fact that he was bound to communicate.

One case is in 4 Cold., 608. That was a case in which the debtor, in failing circumstances, at the instance of his sureties, made a tender, held hy the court to be valid, of the full amount due, which was refused by the creditor. The debtor failed and the sureties were discharged, because the creditor wrongfully refused to take the debt when tendered. In the other case, sureties became bound for the faithful discharge of an agent's duty at one depot, and the agent was transferred to another, where different and larger responsibilities were imposed upon him, and this court said it was a material change of duties, and increase of responsibility, for which the sureties were not bound: 2 Lea, 393.

Neither of these cases is analogous to this case. In the latter case it is said, entire good faith is due the surety, and if any fact increasing his responsibility be concealed from a surety, it will operate to release him. That is, if by any act of the creditor his liability is increased beyond what it was at the time he became bound, he will be discharged. In all cases, concealment or failure to disclose, becomes fraudulent only when it is the duty of a party having knowledge of

the facts to discover them to the other party: 2 Pom. Eq., sec. 902. And this author, in the same section, says: "All the instances in which the duty to disclose exists, and in which a concealment is therefore fraudulent, may be reduced to three distinct classes:

1. Where there is a previous definite fiduciary relation between the parties.

2. Where it appears one or each of the parties to the contract *expressly* reposes a trust and confidence in the other.

3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this last class."

But the strict rule in respect to non-disclosure applied in insurance cases, does not extend to contracts of suretyship or guaranty. If enquired of, the creditor is bound to answer fully and truly. But he is not bound voluntarily, without being asked, to disclose any circumstances *unconnected with the particular transaction* in which he is about to engage, which will render the position of the surety more hazardous, or to inform him of any matter affecting the general credit of the debtor: Kerr on Frauds, 122; Brandt on Suretyship, sec. 365; 82 N. Y., 127.

In 12 Lea, 305, the case of *D. C. & J. W. Hubbard v. J. W. Fravell et al.*, is reported. In that case Hubbards filed a bill against Fravell and his creditors, seeking release as sureties of Fravell, on the ground of fraudulent concealment of facts which materially increased the risk of their suretyship. It seems Fravell's creditors had obtained judgments and levied execu-

tions on his goods, and he obtained the Hubbards to become his surety for sixty per cent. of his indebtedness, and gave his individual notes for the remaining forty per cent., and the levy was released. The fact not communicated to the surety by the creditors, was the execution of the note for forty per cent., no inquiry having been made of them. This court held, Judge Cooper delivering the opinion, that a debtor, in procuring security, acts for himself and not for the creditor, and not having inquired of the creditor, although his indebtedness was larger than he supposed, he was not misled by the creditors; that the transaction was an ordinary one for the adjustment of pressing debt, and there was no ground for imputing misconduct to the creditors, and held the sureties bound.

This case presents the failure to disclose to the sureties the indebtedness of their principal as the evidence of fraud. The other indebtedness of Jackson, although it may make the relation of suretyship more hazardous, is unconnected with the undertaking in the bond. But, as was said in the New York case cited, to hold the surety was discharged because of the omission of the creditor to advise him of the previous transactions between the debtor and creditor, in the absence of any inquiry on the subject, would establish a rule that would make instruments like the one in question of little value. In that case the debtor was largely in arrears with the creditor on sales of sewing machines, and the surety was seeking exoneration on the ground of concealment of the state of accounts between them when he became surety.

In this case the machines were sold to Jackson, and defendants, Atkin and J. W. Gaut, bound themselves as sureties, or absolute guarantors, for the payment of the machines sold, and they must be held to the performance of their contract. The application of the proceeds to the old debts was authorized by Jackson, and he had the legal right to so apply them.

The defendants requested the court, on the trial of the issues submitted to jury, to charge several propositions upon the question of fraud, inconsistent with the charge as given by the court. This was refused. We think there was no error in this, as the charge as given by the court was correct.

The result is, that the exceptions to the report of the Referees must be sustained, and the report set aside, and the chancellor's decree affirmed.