927 F.2d 603
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AETNA CASUALTY & SURETY COMPANY, Plaintiff-Appellee,
v.
The FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the
Resolution Trust Corporation, as Conservator for
Century Federal Savings Bank, Defendant-Appellant,
Delta Properties, Ltd., Danny Cole, William T. Sullivan,
Hall and Benedict Agency, Defendants.
 No. 90-5292.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1991.
 
 On Appeal From the United States District Court for the Middle District of Tennessee, No. 88-01104 Wiseman C.J.
 M.D.Tenn.
 REVERSED AND REMANDED.
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and GRAHAM, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Century Federal Savings Bank (Century),[1] appeals from an order of the district court granting summary judgment to plaintiff, Aetna Casualty and Surety Company (Aetna). This suit arose when Aetna sought a declaratory judgment that its obligations under a performance and payment bond issued to Century were unenforceable.[2] Century subsequently counterclaimed against Aetna alleging that Aetna was liable to Century either under the bond or on account of Aetna's negligent failure to control the actions of its agent, William T. Sullivan (Sullivan), who issued the bond. Aetna filed a motion for summary judgment, and Century filed a cross-motion for summary judgment on its counterclaim. After a hearing on the motions, the trial court granted Aetna's motion on the ground that Century had executed a valid release of Aetna's obligations under the bond and, Aetna therefore is not liable to Century, either under the bond or for its failure to control the actions of Sullivan. On appeal, Century contends that the trial court erred in granting summary judgment when genuine issues of material facts exist as to (1) whether Aetna is liable for the wrongful acts of Sullivan, and (2) whether the release on the bond was obtained by fraudulent misrepresentations or concealment of material facts, and therefore invalid. In its response, Aetna asserts not only the propriety of the trial court's holding that the release was valid, but also continues to assert that additional grounds exist for granting summary judgment. We reverse.
 
 I.
 
 2
 In May 1987, Century made a construction loan to Delta Properties, Ltd. (Delta), of approximately $3.5 million for financing construction of an apartment-condominium complex known as Post House Dyersburg (PHD) in Dyersburg, Tennessee. As a condition of granting the loan, Century required that Delta obtain a performance and payment bond in the amount of $3.2 million. In April 1987, a meeting was held in Delta's office to discuss issuance of the bond. Present at this meeting were Danny Cole (Cole), Delta's general partner, Sullivan, and Paul Caron, a Century vice president.
 
 
 3
 Although the parties dispute the actual purpose of the bond, at the time of closing on the loan Century received through Sullivan a document labeled a "PERFORMANCE AND PAYMENT BOND" in the amount of $3.2 million. The document identifies Century as the "Owner," Delta as the "Principal," and Aetna as the "Surety." The document provides in pertinent part that:
 
 
 4
 WHEREAS, the Principal has entered into a certain written contract with the Owner, dated the 15TH day of MAY, 1987, to CONSTRUCT 100 UNIT APARTMENT/CONDOMINIUM COMPLEX KNOWN AS POST HOUSE DYERSBURG LOCATED 2335 FEDERAL DR. DYERSBURG, TENN. which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.
 
 
 5
 NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall fully indemnify the Owner from and against any failure on his part faithfully to perform the obligations imposed upon him under the terms of said contract free and clear of all liens arising out of claims for labor and material entering into the work, and if the said Principal shall pay all persons who shall have furnished labor or material directly to the Principal for use in the prosecution of this aforesaid work, each of which said persons shall have a direct right of action on this instrument in his own name and for his own benefit, subject, however, to the Owner's priority, then this obligation to be void, otherwise to remain in full force and effect.
 
 
 6
 (App. 128). The bond was purportedly executed by Garry Black as attorney-in-fact on behalf of Aetna. Attached to the document is a "POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT" which purportedly authorizes Garry Black and several other persons to act as Aetna's attorney-in-fact.
 
 
 7
 The bond was a forgery. The signature was not Garry Black's, nor was Garry Black even employed by Aetna at the time the document was executed. The document misidentified Century as the "owner" of PHD, when Delta was the owner, and the written contract between Century and Delta to which the document referred never existed. Nevertheless, Century apparently concluded that the document obligated Aetna as Delta's surety and issued the loan to Delta.
 
 
 8
 In June 1987, Century made a $26,000 disbursement to Delta, which was earmarked as payment of the premium on the performance and payment bond. In spite of this identification of the purpose of the disbursement, Cole, who was responsible for paying for the bond, testified that he actually paid only $15,000 to Sullivan's agency. Aetna received no premium payment.
 
 
 9
 In February 1988, Cole filed a "notice of completion" of the construction on PHD in the Dyer County Register's Office. In April 1988, he sent a copy of the notice with a letter to Century requesting a release on the bond. Following a second request from Cole, Century inspected the property and notified Delta that its request for release was denied because the project was not completed. In his requests, Cole emphasized that a release was necessary or else he would have to renew the bond and incur additional costs. According to Cole's deposition, he had very little experience with this type of bond and merely assumed that its continuation would require additional payments in the same manner as his insurance policies. In any event, Cole made subsequent requests and met with Century to discuss the release, the "past due" status of the loan, the possibility of foreclosure, assumption of the loan by a potential buyer of the project, and other construction projects. During these negotiations, Century informed Cole that it would take action on his request for a release on the bond "when this project is complete and the proper notices have been given."
 
 
 10
 On September 20, 1988, Cole filed a second "notice of completion." Ten days later, on Friday, September 30, 1988, Mr. Lynn Thompson, vice president of Century, called Aetna's Nashville branch office. The purpose of the call, according to Thompson's affidavit, was "to inquire as to the proper procedure for releasing Aetna from its obligations under [the bond]." When Thompson provided Randy Deal, an Aetna employee, with the details of the bond, Deal indicated that he was having trouble finding the file and a copy of the bond, and that he would return Thompson's call after an investigation. Later that day, Deal called Thompson back and requested a copy of the bond because he could not find a file or any information regarding the bond. Thompson then sent Aetna a telecopy of the bond. This was the first that Aetna had seen or heard of the bond.
 
 
 11
 Upon receipt of the telecopy, Hal Wilson, the manager of the bond department at Aetna, was "pretty sure" that the bond was a forgery because it purportedly bore the signature of Garry Black, an Aetna employee who had not worked in the Nashville office for several years. Wilson and others at the office agreed that the signature did not belong to Black. On Wilson's instructions, Deal called Thompson and asked where Delta was located and whether Century had disbursed funds to Delta to pay for the bond. Deal did not inform Thompson of Aetna's suspicion that the bond was a forgery. Aetna then telephoned Delta's office in Jackson, Tennessee, and learned that the person who issued the bond was Sullivan.
 
 
 12
 On Monday, October 3, the next business day, Thompson received a call from Sullivan. Sullivan instructed Thompson to prepare a letter releasing Aetna from its obligations under the bond and told Thompson that he would make certain Aetna's obligations were released. Later that day, Thompson received a telecopier transmission from Cole stating that he had just spoken with Sullivan and requesting Thompson to include the original bond with the release letter. Thompson prepared the release letter which stated: "We hereby this date release The Aetna Casualty and Surety Company on Bond # 065871473 for Delta Properties, Ltd., dated May 15, 1987." (App. 20). Cole's secretary picked up the letter and the bond later that afternoon.
 
 
 13
 A few days later, Thompson again called Randy Deal at Aetna to inquire about the release. During that conversation, Deal informed Thompson that the bond was a forgery. In spite of receiving this information, Thompson or Century took no steps to retract the release. Within the next month, Delta defaulted on the payment of the loan as provided for in the promissory note and Century instituted foreclosure proceedings. Century purchased PHD at a foreclosure sale on November 17, 1988. After purchasing the property, Century discovered defects in the construction and contacted Aetna about receiving payment under the bond in order to remedy the defects. By letter dated November 30, 1988, Aetna informed Century that it formally disavowed any and all liability under the bond.
 
 II.
 
 14
 We review a grant of summary judgment de novo, using the same test as used by the district court. See Burkart v. Post-Browning, Inc., 859 F.2d 1245, 1249 (6th Cir.1988), petition for cert. filed (Jan. 17, 1989); Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1161 (6th Cir.1988). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Canderm Pharmacal v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988); Berlin, 858 F.2d at 1161. Thus, summary judgment may not be granted unless there are no remaining material facts in dispute when the evidence is construed most favorably to the nonmoving party. Burkart, 858 F.2d at 1249. The substantive law determines those facts that are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, the evidence and all reasonable inferences therefrom must be examined in a light most favorable to the party opposing the motion. Criss v. City of Kent, 867 F.2d 259, 261 (6th Cir.1988).
 
 
 15
 Century's claim that Aetna engaged in fraudulent misrepresentation or concealment does not rest merely on the one day of communications between Aetna's bond office and Century concerning procedures for releasing the bond. Century's claim is also grounded on the theory that, because Sullivan was acting as the agent of Aetna, any fraudulent activity on the part of Sullivan, whether involving the release or the sale of the bond, can be imputed to Aetna.[3] In Tennessee, the insurance agent is the agent of the insurer in any controversy arising from the application for insurance, or any policy issued in connection therewith, between the insured or his beneficiary and the insurer, and shall not be regarded as the agent of the insured. Tenn.Code Ann. Sec. 56-6-147. In its definitions of kinds of insurance, Tennessee includes "surety insurance," which it defines as including "[g]uaranteeing the performance of contracts, and guaranteeing and executing bonds, undertakings, and contracts of suretyship." Tenn.Code Ann. Sec. 56-2-201(6)(C). Therefore, the facts that are material to Century's claim are governed, in part, by the substantive law of agency regarding principal liability to third persons for agent misconduct.
 
 
 16
 Aetna seeks to avoid liability for Sullivan's actions by pointing out that the bond was both unauthorized and forged. Aetna first argues that a primary condition of principal liability for an agent is that the agent be on the business of the principal, acting within the scope of his employment. Maintaining that it never authorized Sullivan to issue performance and payment bonds, Aetna argues that it cannot be held responsible for Sullivan's wrongful activity relating to the issuance of these bonds. Second, Aetna suggests that the law exonerates the principal for liability where its agent commits intentionally wrongful or criminal acts, and, because forgery involves deceitful and fraudulent behavior, the law applies to absolve Aetna of responsibility.
 
 
 17
 Aetna's first argument obfuscates the distinction between real and apparent authority. The record before the trial court indicates that Sullivan was not authorized to issue performance bonds without first having someone in Aetna's bond department sign the bond. However, an agent acting within the general scope of his apparent authority, though exceeding his actual authority, binds his principal. Estate of Wilson v. Arlington Auto Sales Inc. 743 S.W.2d 923, 929 (Tenn.App.1987).
 
 
 18
 The question is not so much, what powers did the agent actually possess, it is the agent's ostensible or apparent authority, that which he is held out to the world to possess, which is the test of his actual powers in the absence of knowledge of limitations thereon on the part of persons dealing with such agent. So it may be generally stated that an insurance company will not be allowed to hold out a person as its agent, and then disavow responsibility for his acts. And the tendency of the courts at the present day is toward a liberal, rather that a strict, construction of an agent's powers ... the rule has been extended to cover such acts of the agent as are with (sic) the scope of such authority as the assured was justified, by the company's acts, in believing him to possess. So that an insurance company is bound by the acts of its agents within the real or apparent scope of his authority, and, to this extent, the act of the agent is that of his principal. And this is so, even though he violates limitations upon that authority which are not brought home to the knowledge of the party with whom he deals, and this applies even though the agent's acts be in direct violation of his instructions....
 
 
 19
 Corbitt v. Federal Kemper Ins. Co., 594 S.W.2d 728, 735-36 (Tenn.App.1979) (citing 44 C.J.S. Insurance Section 228 (1945)). Thus, Sullivan would have apparent or ostensible authority to issue Century the performance bond if Aetna knowingly permitted Sullivan to exercise that authority or held Sullivan out as possessing such authority to act for Aetna, even though such authority was never actually granted. See Bailey v. Life & Casualty Ins. Co., 250 S.W.2d 99, 103 (Tenn.App.1951). However, Sullivan's apparent authority must be traceable to the principal and cannot be proved solely by the acts or representations of the agent. Id.
 
 
 20
 We need not determine here the extent of Sullivan's authority and our discussion is intended only to address whether the evidence, when viewed in a light most favorable to Century, shows any genuine issue as to Sullivan's authority to bind Aetna. This discussion should not be construed as suggesting that summary judgment should be granted in favor of Century on its counterclaim. The scope and extent of an agent's real and apparent authority is to be decided from all the facts and circumstances in evidence, and ordinarily this is a fact for the fact finder's determination. Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Co., 298 S.W.2d 788, 792 (Tenn.App.). According to deposition testimony, Sullivan held himself out as an Aetna agent at the April 1987 meeting attended by Sullivan, Cole, and Carson to discuss the construction loan and performance bond. The record further indicates that Carson left the meeting with the understanding that a bond would be issued by Aetna that would insure the construction of PHD according to project plans and specifications.
 
 
 21
 The record provides enough facts to draw at least the inference that Sullivan's apparent authority to issue the performance bond was traceable to Aetna, justifying Century's belief that Sullivan was acting within the scope of his authority. Deposition testimony indicates that Hall & Benedict has been an authorized Aetna agent since 1909, and Sullivan sold all lines of Aetna products, including license permit bonds, notary public bonds, and miscellaneous court bonds. While it appears to be the general practice to require agencies like Hall & Benedict to obtain the surety's approval prior to issuance of payment and performance bonds, Aetna admits that the issuance of these bonds on behalf of Aetna by such agencies is done in the normal course of business. Furthermore, according to evidence in the record, Sullivan had issued bonds before without first obtaining Aetna's authorization, and although Aetna reprimanded Sullivan by revoking his power of attorney to sign bonds, he retained the authority to solicit bond business and sell bonds with Aetna's authorization.[4]
 
 
 22
 While Sullivan may have violated limitations on his authority, it is the duty of the insurer to bring restrictions of its agent's authority to the knowledge of those dealing with him. Hill v. J.R. Alexander Corp., Shelby Equity No. 6 (Tenn.App. May 4, 1988) reh'g denied (Tenn. June 8, 1988); see O'Shea v. First Fed. Sav. & Loan Ass'n of Columbia, 405 S.W.2d 180, 183-84 (Tenn.1966). We find that there is a genuine issue of material fact as to whether Aetna, either expressly or by implication, put Sullivan in such a position or charged him with such duties that Aetna is responsible for the consequences of his wrongful acts toward Century. See Morristown, 298 S.W.2d at 792 (the principal may, either expressly or by implication, put the agent in such a position). Moreover, drawing all inferences of fact in favor of Century, it is reasonable to infer that Century could reasonably take Sullivan's authority to include the power to sell and issue performance bonds on behalf of Aetna.
 
 
 23
 Aetna's argument that principals are not liable for their agents' deceitful and fraudulent behavior is without merit. To the contrary, the authorities have generally held the principal liable to innocent third persons when the representation was made in the course of the principal's business, apparently for his account, and while the agent was acting within the general scope of his authority, even though in the particular case he was secretly abusing his authority and attempting to perpetrate a fraud upon his principal. Morristown, 298 S.W.2d at 793 (citing Mechem, Agency Sec. 1990 (2d.ed.)). Tennessee law binds a principal for all acts, representations, or contracts, of its agent, whether fraudulent or negligent in character, that are within the scope of the agent's real or apparent authority. Rhodes v. Johnson, 222 S.W.2d 38, 41 (Tenn.App.1949); J.R. Alexander Corp. Although a distinction may be drawn where fraud is committed on the part of the agent and the insured, J.R. Alexander Corp., here, Century is the insured and innocent party.
 
 III.
 
 24
 The district court determined that the record presented no genuine issues of fact on Century's claims, as any obligations owed by Aetna under the bond or under a negligence theory, were extinguished when Century executed the letter releasing Aetna on the bond. Century contends that the court erred when it found no reasonable inference from the record that the release was fraudulently obtained and thus invalid. We are persuaded that the district court erred.
 
 
 25
 A release that is procured by fraudulent misrepresentations is voidable, and may be set aside at the instance of the party defrauded. See Crigger v. Mutual Benefit Health & Accident Ass'n, 69 S.W.2d 907 (Tenn.App.1933); Pearson v. Mutual Life Ins. Co., 68 S.W.2d 963 (Tenn.App.1933). An action for fraud under Tennessee law comprises six necessary elements: (1) representation of an existing or past fact; (2) that is false; (3) regarding a material fact; (4) made knowingly, or without belief of its truth, or recklessly, careless whether it be true or false; (5) upon which the plaintiff reasonably relied; and (6) which resulted in damages to the plaintiff. See Edwards v. Travelers Ins. Co., 563 F.2d 105, 110-13 (6th Cir.1977). The district court ruled that the record contained no evidence from which a trier of fact could reasonably find misrepresentation, based on an absence of evidence to support the falsity and materiality elements.
 
 
 26
 Century argues two grounds for finding fraudulent misrepresentation. Century contends that Aetna's failure, when Century called Aetna to determine how the bond could be released, to disclose that the bond was a forgery or that the bond was not the type ordinarily released, amounted to fraudulent concealment of material facts. Century argues that had it known either fact it would not have executed the release. The district court found no genuine issues of fact supporting this claim, holding that Aetna had no duty to disclose these facts, and, assuming arguendo that it did, that the facts were not material to Century's decision to execute the release. Second, Century points to Sullivan's phone call to Century, where he instructed Century to prepare a letter releasing Aetna of its obligations under the bond, as perpetuating the on-going scheme of Sullivan and Delta to defraud Century. The district court granted summary judgment in favor of Aetna based upon its conclusion that Sullivan's instructions to Century concerning the release were neither false, nor material to Century's decision to release Aetna.
 
 A.
 
 27
 In order to be material, a representation must have determined the conduct of the party alleging fraud. Dozier v. Hawthorne Dev. Co., 262 S.W.2d 705, 709-10 (Tenn.App.1953). The district court determined that it was Century's belief that the project was complete which prompted Century to execute the release, not Aetna's silence as to the suspected forgery or abnormal form of release. Century acknowledges that its belief that the project was complete contributed to the decision to release the bond. Yet, there is sufficient evidence in the record from which a reasonable finder of fact could infer that, had Aetna disclosed these facts, then Century would not have so quickly executed the release. It is reasonable to infer that, upon learning the bond was a forgery and the releases were not standard practice, Century would be put on notice that it was being deceived by Cole, the very party that it relied on for assurances that the construction project was complete. Once Century was aware of the deceit, it could have avoided the damage that it did to its position by releasing the bond.
 
 
 28
 For the same reasons, it is reasonable to infer that Sullivan's instructions contributed to procuring the release, where Century was operating under the mistaken belief that Sullivan was speaking for Aetna. Having contacted Aetna's bond office on Friday to determine the appropriate procedure for releasing the bond, Sullivan's return call on Monday could reasonably have been taken by Century to be Aetna's reply. Moreover, it is not sufficient to determine the materiality of misrepresentations by isolating each conversation and analyzing them independently. Under Tennessee law, "[a] fact may be inferred from circumstantial evidence and such fact may be the basis of further inference to the ultimate or sought for fact." Stinson v. Daniel, 414 S.W.2d 7, 11 (Tenn.1967). Therefore, in order to adduce materiality, it is necessary to view the Sullivan and Aetna conversations within the totality of the circumstances giving rise to fraud. Set in their proper context, Sullivan's instructions could be viewed as part of a continuing pattern of behavior by Sullivan in concert with Delta to defraud Century. Efforts designed to perpetuate Century's misunderstanding about the bond and the release could certainly be viewed as material, particularly when considered along with efforts by Sullivan and Delta to conceal the scheme to defraud Century in the first instance.
 
 
 29
 Of course, nothing in this opinion precludes Aetna from arguing and establishing that the statements of Sullivan or Aetna's bond department did not induce Century to execute the release, and therefore, this discussion is not intended to suggest that Century is entitled to summary judgment on this issue. We are not saying that Century did rely on the statements to the point of being induced to execute the release, but we do say that the record, when viewed in a light favorable to Century, could produce that inference.
 
 B.
 
 30
 While the same principles of materiality apply to each of the conversations, the law of Tennessee distinguishes between fraudulent misrepresentation and fraudulent concealment, the latter requiring a duty of disclosure upon the party having knowledge of a fact or condition before concealment or nondisclosure becomes fraudulent. See Dozier, 262 S.W.2d at 711. Thus, where Century alleges misrepresentation on the part of Sullivan and fraudulent concealment on the part of Aetna's bond department, for Aetna's representations to be actionable as fraud, Century must prove not only the six elements of fraud listed from Edwards, supra, but also demonstrate that Aetna has an affirmative duty to reveal either that the bond was a forgery or that release of these bonds is unusual.[5] Ordinarily, no duty of disclosure exists except, (1) where there is a previous confidential relationship between the parties; (2) where it appears one or each of the parties expressly reposes a trust or confidence in the other; or (3) where the contract or transaction itself is intrinsically fiduciary and calls for good faith, as in cases of insurance contracts. Dozier, 262 S.W.2d at 711.
 
 
 31
 While Tennessee normally may not extend the duty of disclosure applied in insurance cases to contracts of suretyship or guaranty, Domestic Sewing Mach. Co. v. Jackson, 83 Tenn. 418, 425 (1885), disclosure is required with respect to matters inquired of and related to the transaction, id., and where knowledge of criminal conduct related to the transaction is possessed, even where not inquired of, Herbert v. Lee, 101 S.W. 175 (Tenn.1907). Century made a direct inquiry to Aetna regarding the appropriate procedure for releasing the bond, and Aetna's knowledge that such bonds normally are not released is certainly related to the release transaction. Furthermore, the record indicates that the same day Century inquired as to the procedure for release of the bond, Aetna examined a copy of the bond, suspected that it was forged, and learned by calling Delta that its agent, Sullivan, issued the bond. The record, therefore, provides sufficient evidence from which it could be inferred that Aetna knew that one of its agents had engaged in criminal activity regarding the issuance of this bond.
 
 C.
 
 32
 The district court further erred in holding that a reasonable trier of fact could not conclude that Sullivan's instructions on releasing the bond were false. "When a party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to obtain an undue advantage of him, in every such case there is a positive fraud in the fullest sense of the term." Rose v. Foutch, 4 Tenn.App. 495, 499 (1926). We conclude that the record, when examined in a light most favorable to Century, can support the finding that Sullivan intended to produce a false impression concerning normal practice for releasing the bond in order that he could complete and conceal his scheme to defraud Century.
 
 IV.
 
 33
 If the district court reached the right conclusion for the wrong reasons, we can always affirm for reasons other than those stated by the district court. See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985); United States v. Anderson County, 761 F.2d 1169, 1174-75 (6th Cir.), cert. denied, 474 U.S. 919 (1985). We can do so, even if the district court has relied upon an erroneous basis for granting summary judgment, so long as the opposing party is not denied an opportunity to respond to the new theory. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1150 (6th Cir.1988). Aetna asserts that even if the district court erred in holding that Century had executed a valid release, Aetna should be granted summary judgment on other grounds. The other grounds asserted below and urged again on appeal by Aetna are: (1) the forged bond was never a contract; (2) a condition precedent to Aetna's obligation, the making of a written contract referred to in the bond, never occurred; (3) the foreclosure sale precludes claims by Century; and (4) the bond was forged and not authorized by Aetna. We decline to grant summary judgment to Aetna on these grounds.
 
 A.
 
 34
 The party asserting the existence of a contract must prove that the agreement on which it relies is supported by adequate consideration, that there was a mutual assent to the terms of the agreement, and that the agreement was sufficiently definite to be enforceable. Price v. Mercury Supply Co., 682 S.W.2d 924, 933 (Tenn.App.1984). Aetna argues that the bond was never a contract, because there was no consideration given to Aetna and no mutual assent existed between Aetna and Delta. Aetna further asserts that the bond is not sufficiently definite to be enforced where it fails to specify what is bonded.
 
 
 35
 Notwithstanding Aetna's argument, we find that summary judgment on this ground would be improper when the evidence is such that a reasonable finder of fact could decide that the bond is an enforceable contract. Consideration can be either a benefit to the party making the promise or a detriment to the party receiving the promise. Although Aetna never received payment for the bond, there is evidence that Century paid $26,000 as reimbursement for expenses incurred by Delta in obtaining the bond, and that Sullivan received part of this payment. In addition, the bond was a condition of the construction loan made by Century to Delta. Aetna's argument, that there was no mutual assent between Delta and Aetna, relies on the proposition that Sullivan was not acting within his apparent authority when he negotiated the bond with both Delta and Century. As we have already stated at length, genuine factual disputes exist on this question.
 
 B.
 
 36
 The contention that the bond is not sufficiently definite to be enforced relies essentially upon the same analysis proffered to support Aetna's second argument for summary judgment, that a condition precedent to its obligations under the bond never occurred. Proceeding under Aetna's analysis, the forged bond fails to specify what is bonded and does not come into being as a contract, because Century and Delta never entered into the written contract that is recited in the forged bond.
 
 
 37
 We agree with Aetna that a contract which is subject to a condition precedent does not come into being unless the condition is performed. Guilbert v. Phillips Petroleum Co., 503 F.2d 587, 590 (6th Cir.1974). "A conditional contract is a contract the very existence and performance of which depends upon the happening of some contingency or condition expressly stated therein." Buchanan v. Johnson, 595 S.W.2d 827, 830 (Tenn.App.1979). We cannot, however, accept Aetna's interpretation that its obligations under the bond arise only if there exists a written contract, entered into on May 1987 by Century and Delta, to construct the PHD complex.
 
 
 38
 First, the bond never expressly states that Aetna's obligations arise only if a May 1987 contract is made. Under the plain terms of the bond, the only "condition of this obligation" is that if Delta shall indemnify Century for any failure by Delta to perform its obligations under the contract free and clear of all liens, then the surety "obligation [is] to be void, otherwise to remain in full force and effect." This appears to be in the nature of a condition subsequent, whereby Aetna's duty to perform ceases in the event that Delta shall otherwise indemnify Century against Delta's failure to perform its obligations under the referenced contract.
 
 
 39
 Second, although parole evidence is permitted to establish a condition precedent, Strickland v. City of Lawrenceburg, 611 S.W.2d 832, 838 (Tenn.App.1980), the record below, when viewed in a light most favorable to Century as required by Fed.R.Civ.P. 56, does not demonstrate beyond dispute that Aetna is entitled to judgment as a matter of law on this issue. "The intention and understanding of the parties at the time of making the contract will determine whether the contract is a conditional contract and whether the condition, if such it be, is a condition precedent or a condition subsequent." Buchanan, 595 S.W.2d at 830. Where the record indicates that Century and Delta executed a construction loan on May 15, 1987, the same date as the performance bond, that Century orally conditioned the loan upon the execution of the bond, and that Cole and Sullivan agreed to meet that condition by securing an Aetna bond, the record does not so unequivocally support the interpretation urged by Aetna as to justify summary judgment.
 
 C.
 
 40
 As to the third ground asserted by Aetna for summary judgment, we find no reason to distinguish Century as owner of the property after foreclosure from Century as the party making the loan that was conditioned upon issuance of the bond. If the bond obligates Aetna to Century for Delta's failure to complete the project in accordance with agreed upon specifications, then there is no reason why a change in Century's status subsequent to the issuance of the bond should affect that obligation. The terms of the bond make no such distinction, and the language of a contract is to be construed against the party drafting the document, who in this case appears to be Aetna's agent. The fourth ground offered for summary judgment, that the bond was forged and unauthorized, relies on the same agency law issues which we have already discussed at length and about which genuine issues of material fact remain.
 
 
 41
 For the foregoing reasons, we find that the district court erred in granting summary judgment to Aetna. This case is REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Although the Federal Deposit Insurance Corporation (FDIC) filed the notice of appeal in its capacity as conservator for Century, for the sake of clarity, we refer to the defendant as Century, the original party to the suit. According to Century's brief, on March 8, 1989, the Federal Home Loan Bank Board, pursuant to Resolution No. 89-740, appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as conservator for Century. Pursuant to an agreement between the FSLIC and the FDIC, the FDIC agreed to manage the FSLIC's conservatorship of Century. Subsequently, on August 9, 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 was enacted, with section 401(a)(1) providing for the abolition of the FSLIC and section 501(b)(6) directing that the Resolution Trust Corporation (RTC) shall serve as successor to the FSLIC. Further, section 501(b)(1)(C) provides that the FDIC will perform the management responsibilities of the RTC. On June 14, 1990, the Office of Thrift Supervision of the Department of the Treasury appointed the RTC as receiver for Century, and in that capacity the RTC succeeded itself in its capacity as conservator for Century. By motion for substitution of party, the RTC was subsequently named as the true defendant in this action
 
 
 [2]
 Joined as co-defendants in Aetna's complaint were Delta Properties, Ltd., a limited partnership engaged in the construction business; Danny Cole, Delta's general partner; the Hall & Benedict Agency, a Nashville insurance agency; and William T. Sullivan, a partner in Hall & Benedict who issued the subject bond to Century. Aetna sought indemnification from Hall & Benedict and Sullivan on the basis of fraud and negligence in the event the court declared that Aetna was liable to Century under the bond. Delta and Cole were joined as co-defendants because the bond issued by Aetna to Century guaranteed Delta's performance on an apartment construction project in Dyersburg, Tennessee, for which Century had loaned Cole $3.65 million
 In addition to seeking a judgment against Aetna under the bond for the amount necessary to correct construction defects discovered in the project, Century also filed cross-claims against Delta, Cole, Sullivan, and Hall & Benedict, seeking damages in an amount necessary to correct the construction defects as a result of the fraudulent activities of Cole and Sullivan.
 
 
 [3]
 Century attempts to widen the net of Aetna's liability to include, not only Aetna's bond department, but also Sullivan (by alleging agency) and Cole (by alleging conspiracy). The district court, finding the release valid, did not feel compelled to address Century's claim that Aetna was responsible for Sullivan's actions concerning sale of the bond, and either liable directly under the bond or for negligent failure to control Sullivan. However, Sullivan's actions are also relevant to the release and, therefore, issues of agency complicate both the validity of the release and the sale of the bond
 
 
 [4]
 The normal business practice of agencies selling Aetna services is to obtain approval prior to the issuance of performance bonds. Aetna could give an agent the power of attorney to sign performance bonds, in which case they could issue the bond by signing it themselves. Pre-approval from Aetna is still required in these instances which is obtained by submitting financial statements and other general information provided by the contractor. Where the agent does not have power of attorney from Aetna, the agent could still arrange the sale of performance bonds, but the bond would be executed in the bond department of Aetna's branch office. Although Aetna revoked Sullivan's power of attorney, it still allowed him to sell bonds upon obtaining Aetna's authorization. In addition, Don Punch, Sullivan's co-partner in Hall & Benedict, was allowed to retain his power of attorney after Sullivan's power of attorney was revoked
 
 
 [5]
 The two actions are also distinguished by their scienter requirements. While a false representation has to be made knowingly, or without belief in its truth, or with reckless regard for its truth, such intent is often difficult to prove, and thus may be properly proved by wholly circumstantial evidence. Edwards, 563 F.2d at 111-12. The record certainly contains circumstantial evidence to support the finding that Sullivan's instructions to Century regarding the appropriateness of a written release were made with the intent necessary for finding fraud. Fraudulent concealment, on the other hand, can be established whether or not fraudulent intent is present, if there is a breach of legal or equitable duty. Id. at 114. "Constructive frauds are acts, statements, or omissions, which operate as virtual frauds on individuals ... and yet may have been unconnected with any selfish evil design, or may amount, in the opinion of the person chargeable therewith, to nothing more than what is justifiable or allowed." Id., citing Bank of Blount County v. Dunn, 10 Tenn.App. 95 (1929). Thus, when there is a duty to disclose an existing fact or condition, the scienter element necessary for showing fraudulent misrepresentation is not present