DON CANNON and                     )
MARY LEE CANNON,                   )
                                   )
    Plaintiffs/Counter-Defendants/ )
    Appellants,                    )          **FILED**

**January 10, 2000**

Cecil Crowson, Jr.
Appellate Court Clerk
                                   )   Appeal No.
v.                                 )   M1999-02123-COA-R3-CV
                                   )
WENDY MARCH,                       )
                                   )   Wilson Chancery
    Defendant/Counter-Plaintiff/   )   No. 97160
    Appellee.                      )


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CHANCERY COURT FOR WILSON COUNTY

AT LEBANON, TENNESSEE


THE HONORABLE C. K. SMITH, CHANCELLOR



JOHN M. CANNON
Cannon & Cannon
112 Long Hollow Pike, Suite 202
Post Office Box 749
Goodlettsville, Tennessee 37072-0749
    ATTORNEY FOR PLAINTIFFS/COUNTER-
DEFENDANTS/APPELLANTS



ROBERT L. CALLIS
2745 N. Mt. Juliet Road
Post Office Box 726
Mt. Juliet, Tennessee 37121-0726
    ATTORNEY FOR DEFENDANT/COUNTER-
        PLAINTIFF/APPELLEE



AFFIRMED AND REMANDED



WILLIAM B. CAIN, JUDGE

# O P I N I O N

This case comes to us on appeal from the chancellor's detailed findings of fact regarding misrepresentation and contract. The Appellants Don and Mary Lee Cannon purchased a restaurant from the Appellee Wendy March. Mr. Cannon and Ms. March bargained for the sale of a going concern known as "Emmy's Diner," located in Mount Juliet, Tennessee. The instant action was begun when Mr. Cannon brought suit in Wilson County Chancery Court alleging fraud and seeking rescission of the contract, or in the alternative, damages.

Ms. March counterclaimed alleging breach of the contract to purchase and seeking the balance due on a promissory note which served as part of the consideration for the sale. In addition, Ms. March sought damages in the amount of several monthly payments due on her home mortgage. These payments were allegedly additional consideration either for the sale of the restaurant or payments on equipment rental.[1]

The trial court found no misrepresentation on the part of Ms. March. The court awarded damages on Ms. March's counterclaim in the amount of $32,160.00, the unpaid balance on the note plus the five monthly "equipment rental payments which were unpaid." Mr. Cannon urges on appeal that the order of the court with regard to misrepresentation and monthly payments due is against the weight of the evidence.

Since we find that the evidence fails to preponderate against the chancellor's detailed finding, we must affirm the chancellor in all respects. Our consideration hinges on two key elements: first, the alleged misrepresentation concerning the nature and value of the business, and second, the alleged agreement regarding the monthly mortgage payments. The recitation of pertinent facts as well as the factual findings

---

[1] The order of the chancellor characterizes these $432 payments alternatively as interest and equipment rental.

of the chancellor will be bifurcated to accommodate the consideration of issues on appeal. The legal analysis regarding each issue will follow the factual recitation.

I. MISREPRESENTATION

A. FACTS

Mr. Cannon alleged, certain misrepresentations which induced him to purchase Emmy's Diner.[2] One concerned the amount of money to be made should Mr. Cannon take over the operation of the diner. At trial Mr. Cannon testified to certain affirmative statements made by Ms. March in the bargaining process: "She said, $750-$1,000 per day is what the restaurant is doing now." Another alleged misrepresentation concerned the extent of the business at the time of the sale. Although he had independently examined the business on at least one occasion prior to purchase, Mr. Cannon requested certain tax documents which he hoped would reveal the value of the business as a going concern. This request was in keeping with the advice of Mr. Joe Carson from First Union Bank, who assisted Mr. Cannon in the investigation prior to purchase. The documents which Mr. Cannon allegedly relied upon were the 1040 Forms' Schedules C, "Profit or Loss from Business," for tax years 1994-1995. The record shows that although the returns listed only one business, Emmy's Diner, the income represented in Schedules C includes income from Ms. March's catering business. Specifically with regard to income reported in these tax documents, Mr. Cannon stated on direct examination:

Q. Now what was the net profit for 1995 listed on the Schedule C?

A. She showed 17,220.

Q. What were the gross receipts, or sales that, she's showing?

A. $199,971.

---

[2]According to the facts in the record, no title to real property was involved. Mr. Cannon and Ms. March bargained only for the sale of the business and equipment.

Q. Is there anywhere on this form that you received, Mr. Cannon, where it says that this figure was derived from anything other than the restaurant?

A. No, Sir.

Q. [Are the Schedules C] the only documentation you received from Ms. March concerning the sales of the restaurant as to how much it was doing?

A. Yes, Sir.[3]

The record also shows, however, that although Ms. March did not clarify the extent of her catering business at the time of purchase, Mr. Cannon was aware of its existence. Both parties testified that the growing catering business was the reason for selling the restaurant. Despite this information, and the advice of Mr. Carson to obtain as much financial information about Ms. March's business as possible, Mr. Cannon claims to have relied only the above Schedules C and Mrs. March's affirmative statements regarding income.

Mr. Cannon went on to testify that, allegedly in an attempt to maximize decreasing profit, but within four weeks of acquiring the business, he made sweeping changes to Ms. March's business. He changed the name, obtained a permit for the sale of beer, and within two weeks he had changed the hours of operation so as to provide supper service from Monday through Friday.

The sale was executed on August 31, 1996. After this date, according to the testimony at trial, Mr. Cannon's business made between thirty-five and fifty per cent less than the figures given by Ms. March. Mr. Cannon's dissatisfaction with the sales figures peaked in April of 1997. Although Mr. Cannon asserted the above facts as grounds for rescission due to misrepresentation, this Court finds that his extensive investigation of the business itself, as well as the sweeping and almost immediate

---

[3]This testimony is in stark contrast to that given by Ms. March. She stated that Mr. Cannon received her entire "tax files" which include other documentation arguably revealing the extent of Ms. March's baking and catering business.

changes he made to Ms. March's business, are fatal to his claim.

The detailed factual findings issued by the chancellor and concerning this alleged misrepresentation state as follows:

> In 1996 Wendy March decided that she wanted to sell her business known as Emmy's Diner and put it in the hands of a Realtor;... Mr. Cannon took possession of the premises and changed its name from Emmy's Diner to "Moonbeams" and opened a sports bar in part of the premises; Mr. Cannon started selling beer on the premises even though he had been advised by some that the sale of beer on the premises could effect the business and Mr. Cannon knew himself that he would probably lose some business selling beer; After Mr. Cannon took over the restaurant most of the Emmy's Diner employees were either discharged or voluntarily left within a short period of time; After opening the business Mr. Cannon reduced the quantity of food being served and began to buy some of his food supplies from different suppliers;...

The chancellor further found:

> That Mr. Cannon was a learned businessman and had restaurant experience and that he had studied this business; That Mr. Cannon had asked his Banker, Mr. Carson, to look at the business and give him advice on its purchase; that Mr. Carson advised Mr. Cannon that he should get all the financial records he could possibly locate on the business; That Mr. Cannon, even after Mr. Carson's advice, stated that he just wanted to see the profit and loss statements which is basically the Schedule C of Income Tax Return; [sic] Mr. Cannon knew at the time that he purchased the business that Ms. March was doing catering and baking business and that she was to retain the baking and catering; That in fact Ms. March continued to do baking and catering after she sold the business and for a while used the Emmy's Diner business location and used Mr. Cannon's equipment and supplies; ... That Ms. March gave Mr. Don Cannon her 1994 and 1995 Income Tax files including everything she had in them after they were given back to her by her accountant; ... That the catering and baking business at the time of sale were not a substantial part of Emmy's Diner's gross receipts... .

The above findings are well supported in the record below. Mr.

5

Cannon testified as to his restaurant experience. He, as well as Mr. Carson, testified as to the bargaining process. Yet Mr. Cannon urges on appeal that Ms. March did indeed commit fraud either by concealment of the extent of her business or by her overt assertions concerning the possible business revenues. The testimony of Mr. Cannon wavers as to whether these statements concerned present or future earnings, and the trial court found that these statements were merely in the nature of opinion.

B. LEGAL ANALYSIS

On the record before us, we can find no dispute with the chancellor's findings. As for the allegations of concealment, the law is well settled. Fraud may be affirmative or by concealment when there is an affirmative duty to disclose under the facts. As our supreme court stated as early as 1885,

> In all cases, concealment or failure to disclose, becomes fraudulent only when it is the duty of a party having knowledge of the facts to discover them to the other party: 2 Pom. Eq., sec. 902. And this author, in the same section says: "All the instances in which the duty to disclose exists and in which a concealment is therefore fraudulent, may be reduced to three distinct classes:
>
> 1. Where there is a previous definite fiduciary relation between the parties.
>
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
>
> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this class."

*Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418, 424-25 (1885)

Concerning the elements of affirmative fraud, this Court has said:

> The plaintiff in this case also raised a claim against the defendant based on the tort of fraud. The basic elements for a fraud action are: (1) an intentional misrepresentation with regard to a material fact, *Keith*

6

*v. Murfreesboro Livestock Market, Inc.,* 780 S.W.2d 751 (Tenn.Ct.App.1989); (2) knowledge of the representation falsity--that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, *Tartera v. Palumbo,* 224 Tenn. 262, 266-67, 453 S.W.2d 780, 782 (1970); (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, *Holt v. American Progressive Life Ins. Co.,* 731 S.W.2d 923, 927 (Tenn.Ct.App.1987); *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 232 (Tenn.Ct.App.1976); and (4) that the misrepresentation relates to an existing or past fact, *Haynes,* 546 S.W.2d at 232, ...

*Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). The transaction between Mr. Cannon and Ms. March contained none of the above elements. In fact, whether Mr. Cannon characterizes Ms. March's conduct as concealment or affirmative fraud, despite his testimony at trial, the preponderance of the evidence shows that Mr. Cannon did not rely on any representation, affirmative or otherwise, from Ms. March. Mr. Cannon was given ample opportunity to inspect Ms. March's tax files. Mr. Cannon viewed the business which formed the basis of those files. Through this independent examination and discussion during the bargaining process he was well aware of the growing nature of Ms. March's baking business. Yet Mr. Cannon only inspected the Profit/Loss Schedules of Ms. March's tax returns.

In addition and more importantly, Mr. Cannon changed the nature of the business that he purchased within a month after acquisition. Several witnesses, including Mr. Cannon, testified changes in decor, cuisine, beverages , and serving staff. The record even discloses a general unfavorable attitude of clientele toward the new business which developed during Mr. Cannon's tenure.

This case comes to us on appeal from the chancellor's specific findings of fact and are accorded a presumption of correctness absent a showing that the evidence preponderated otherwise. *See* Tenn. R. App. P. 13(d). *See also Associated Partnership I, Inc. v. Huddleston*, 889

S.W.2d 190 at 194 (Tenn. 1994). We find that Mr. Cannon failed to show that the evidence below preponderated against those findings. Therefore, the order of the chancellor denying Mr. Canon's claim for rescission must be affirmed.

## II. THE MORTGAGE PAYMENTS

### A. FACTS

As for the chancellor's determination of the existence of an additional agreement for certain monthly payments on Ms. March's mortgage, the trial court found that the parties had agreed to this arrangement in lieu of Mr. March's payment of interest on the $40,000 demand note which served as a portion of the contract's purchase price. Ms. March specifically testified regarding these payments as follows:

> A. ... And the 432 was – he was to pay me $432. He asked me, he goes, What's your house note? Because making the deal he tried to offer me $50,000 first. He was writing on scratch paper, you know, showing me little figures. And I told him that $50,000 would just pay the bills, that I needed at least 60, 10,000 to take home to be able to pay some of my bills off and buy a few stoves and stuff like that. So he said, Well, I'll pay your house note, 432 a month for one year. At the end of the year I'll pay you the $30,000 back on the note. [*sic*]

Ms. March went on to testify that the only evidence of this arrangement was the $40,000 promissory note with notations discussed *infra*. She testified that Mr. Cannon had paid four months of payments and that six months remained due on the arrangement. Mr. Cannon raised no objection to this testimony below. The actions of the chancellor appear to be in keeping with Ms. March's testimony.

### B. LEGAL ANALYSIS

The chancellor specifically found that Mr. Cannon agreed to pay the above monthly amounts in lieu of interest. Mr. Cannon fails once again to show a preponderance of the evidence to the contrary. *See* Tenn. R. App. P. 13(d). The note to which both parties refer for proof of agreement is a promissory note bearing the date of September 23, 1996. Upon this typewritten instrument appear several handwritten notations.

8

One of these notations reads: "1st Oct. 432$^{00}$ $321$^{00}$ Remainder Don Cannon Pd. Oct.10, Check."

As our supreme court has said:

> In general, where there is no ambiguity in a contract, parol evidence is not admissible to vary the plain meaning of its terms. *Moore v. Moore,* Tenn.App., 603 S.W.2d 736 (1980); *Garner v. American Home Assurance Co.,* 62 Tenn.App. 172, 460 S.W.2d 358 (1969). However, where there exists an ambiguity in a contract, parol evidence is admissible to explain the actual agreement. *Anderson v. Sharp,* 195 Tenn. 274, 259 S.W.2d 521 (1953); *Mills v. Wm. Faris & Co.,* 59 Tenn. (12 Heisk.) 451 (1873).

*Jones v. Brooks,* 696 S.W.2d 885, 886 (Tenn. 1985). The chancellor found that Mr. Cannon failed to pay five payments of $432.00 to Ms. March and properly awarded her that $2,160.00 in damages for the breach.

On all of the controlling issues in this case the chancellor made detailed findings of fact. In our *de novo* review the burden rests upon the appellant to establish that the evidence preponderates against these findings. Tenn. R. App. P. 13(d). Appellants have not carried this burden.

Another and perhaps even greater obstacle faces the appellants. This case turns almost entirely on a credibility comparison between Mr. Cannon on the one hand and Ms. March on the other. In similar circumstances it is held:

> The chancellor was faced with conflicting testimony from Taylor on the one hand and Kovsky on the other. As the trier of fact, the chancellor had the opportunity to observe the manner and demeanor of the witnesses as they testified. The weight, faith, and credit to be given to a witness's testimony lies in the first instance with the chancellor as the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Mays v. Brighton Bank,* 832 S.W.2d 347, 352 (Tenn.App.1992); *Sisk v. Valley Forge Ins. Co.,* 640 S.W.2d 844, 849 (Tenn.App.1982).

9

*Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995).

For the reasons and under the authorities cited above, the decree of the chancellor is affirmed in all respects. The cause is remanded for such other proceedings as may be necessary. Costs on appeal are taxed against the appellant Mr. Don Cannon.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE